EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Socorro Rebollo Vda. de Liceaga<br><br>      Querellante<br><br>                v.<br><br>Yiyi Motors, Motor Ambar, Inc.<br><br>      Querellada | Certiorari<br><br>2004 TSPR 2<br><br>160 DPR _____ |

Número del Caso: CC-2002-743


Fecha: 13 de enero de 2004


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Pierre E. Vivoni del Valle

Abogado de la Parte Querellante:
                    Lcdo. Agustín Mangual Hernández


Abogado de la Parte Querellada:
                    Lcdo. Carlos Concepción Castro



Materia: Revisión Administrativa procedente del Departamento de
        Asuntos del Consumidor, Ofic. Regional de San Juan



Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

En el Tribunal Supremo de Puerto Rico


Socorro Rebollo Vda. de Liceaga


    Querellante

                                     CC-2002-743  Certiorari

      v.

Yiyi Motors, Motor Ambar, Inc

    Querellada


Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


En San Juan, Puerto Rico, a 13 de enero de 2004.

En el recurso de autos nos corresponde resolver si los daños de corrosión causados al vehículo de la Sra. Socorro Rebollo Vda. de Liceaga estaban cubiertos bajo los términos de la garantía que Yiyi Motors le extendió a ella al adquirir dicho vehículo. En síntesis, la Sra. Rebollo Vda. de Liceaga nos solicita que revoquemos una sentencia del Tribunal de Circuito de Apelaciones, confirmatoria la misma de una resolución del Departamento de Asuntos del Consumidor mediante la cual se desestimó la querella de la peticionaria. Por los fundamentos que expondremos a continuación, revocamos.

I

El 17 de marzo de 1997, la señora Socorro Rebollo Vda. De Liceaga (En adelante, "Sra. Rebollo Vda. de Liceaga"), adquirió del concesionario de vehículos de motor, Yiyi Motors, un auto marca Nissan, modelo Máxima, del año 1997, por el precio de $31,275.00. Como parte del negocio le ofrecieron una garantía cuyos términos se explican a continuación:

Nissan le ofrece una *ventajosa* garantía, la cual se explica *detalladamente* en el manual "Información de Garantía de los Nuevos Vehículos Nissan".(Énfasis suplido). La misma incluye:

5 años contra perforaciones por corrosión.

5 años o 60,000 millas (lo que ocurra primero), en el motor de transmisión y diferencial. Esto excluye los mantenimientos recomendados en el manual del propietario, los cuales son responsabilidad del propietario.

3 años o 36,000 millas, lo primero que ocurra, en todas sus partes, excepto la batería, el sistema de aire acondicionado y los ornamentos, cuyas garantías tienen alcances y condiciones diferentes...

La pintura y corroción [sic] superficial o cosmética está cubierta por el período de la garantía básica de 3 años o 36,000 millas, lo que ocurra primero.

Los cinturones tienen garantía por la vida útil del vehículo.

Controles electrónicos de motor, transmisión y bolsas de aire, 5 años o 60,000 (lo que ocurra primero).

El 3 de julio de 2000, la Sra. Rebollo Vda. De Liceaga llevó el vehículo al taller de servicio de Yiyi Motors para

la reparación de la unidad de aire acondicionado. Encontraron que el condensador de la unidad de aire estaba corroído y que otras piezas estaban mohosas. Le informaron que la reparación del aire acondicionado no estaba en garantía puesto que ésta había expirado al cabo de los tres años. La recurrente pagó por dichos servicios. En cuanto al problema de corrosión, Yiyi Motors se negó a corregir dicho desperfecto y refirió a la recurrente al distribuidor del vehículo, Motor Ambar, Inc. Dicho distribuidor, por su parte, negó obligación alguna aduciendo que la garantía no cubría ocasiones en que el vehículo estaba en exposición excesiva al salitre. Le recomendaron a la Sra. Rebollo Vda. de Liceaga que le diera un tratamiento contra la corrosión.

Así las cosas, la Sra. Rebollo Vda. de Liceaga presentó una querella ante el Departamento de Asuntos del Consumidor (en adelante, "DACO"), por alegado incumplimiento con la garantía del vehículo. En síntesis, alegó que Yiyi Motors y Motor Ambar, Inc., se negaban a honrar la garantía correspondiente a daños por corrosión del vehículo. Solicitó que se le repararan las piezas con corrosión y se le diera un tratamiento o se remplazaran las mismas.

Posteriormente, un funcionario del DACO llevó a cabo una inspección del vehículo y concluyó que "el vehículo presentó algunas partes con salitre". La Sra. Rebollo Vda. de Liceaga objetó el referido informe, pero DACO no se

expresó sobre ese particular. Oportunamente, se celebró la vista evidenciaria ante dicho foro administrativo. En la misma, testificaron la Sra. Rebollo Vda. de Liceaga y el perito traído por ésta, el señor Peter Hernández, perito mecánico y hojalatero.

La Sra. Rebollo Vda. de Liceaga, en síntesis, declaró que residía en el Condominio Paseo de Don Juan #379 en Condado, San Juan desde el año 1982. Explicó que antes de comprar el vehículo en controversia había poseído dos vehículos y los estacionaba, igual que al vehículo en cuestión, en el área soterrada de dicho condominio, y que nunca tuvo problema de que se le enmohecieran dichos vehículos. Testificó además que en ese condominio residen 33 familias, que todas ellas poseen vehículos de motor y que nadie se había quejado de un problema similar. Relató, según indicáramos previamente, que tanto Yiyi Motors como Motor Ambar negaron honrarle la garantía. Por último, narró que el Gerente de Servicios de Motor Ambar Inc. le confirmó que al vehículo no le habían dado un tratamiento especial anticorrosivo antes de vendérselo.

Por otro lado, el perito de la querellante declaró que en su opinión y conforme su experiencia, la corrosión sufrida por el vehículo de la Sra. Rebollo Vda. de Liceaga se podía deber al baño de agua de mar que ordinariamente sufren estos vehículos de motor en la travesía por barco hasta llegar a Puerto Rico. Identificó además

fotografías tomadas por él de distintas partes del vehículo que ilustran las áreas del vehículo que tenían problemas de enmohecimiento. **Las querelladas Yiyi Motors y Motor Ambar no ofrecieron prueba testifical ni documental alguna para contradecir dichos testimonios.**

El DACO emitió resolución mediante la cual desestimó la querella. En síntesis, determinó que de la prueba desfilada durante la vista administrativa se desprendía que la corrosión que presentaba el vehículo había sido causada por el salitre. A la luz de lo anterior, y fundamentándose en lo que surgía del manual de Garantía y Vehículos de Motor Nuevos Nissan 1997, desestimó la querella.

Inconforme con dicha determinación, la Sra. Rebollo Vda. de Liceaga acudió ante el Tribunal de Circuito de Apelaciones quien confirmó la decisión del DACO, confiriéndole así deferencia a la determinación administrativa.

De esta resolución acudió ante nos la Sra. Rebollo Vda. de Liceaga y solicitó que se revoque la determinación del foro apelativo, y se decrete que la corrosión causada al automóvil está cubierta bajo la Garantía de la Nissan. Examinadas las comparecencias de las partes, procedemos a revocar la decisión del Tribunal de Circuito de Apelaciones.

II

La función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es una de carácter limitado. La sección 4.5 de la Ley Núm. 170 del 2 de agosto de 1988, 3 L.P.R.A. sec. 2175, mejor conocida como la Ley de Procedimiento Administrativo Uniforme de Puerto Rico, (en adelante, "LPAU") dispone que, "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las determinaciones de derecho serán revisables en todos sus aspectos por el tribunal".

Al interpretar la sección 4.5 de la LPAU hemos resuelto que, en cuanto a las determinaciones de hecho, el criterio bajo el cual un tribunal debe de revisar las determinaciones e interpretaciones de una agencia administrativa es el criterio de razonabilidad. Ahora bien, en armonía con la finalidad perseguida, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción. *Véase*, Fuertes y otros vs. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabe vs. Tribunal Superior, 103 D.P.R. 692, 699 (1975).

A tales efectos, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a

determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. A estos fines, "evidencia sustancial" es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Misión Ind. P. R. v. J.P., 98 J.T.S. 79, Pág. 1160; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por el foro administrativo, los tribunales no deben sustituirlas por su propio criterio.

Es además un principio firmemente establecido que las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada por los tribunales mientras la parte que las impugna no produzca suficiente evidencia para derrotarlas. Misión Ind. P. R. v. J.P., supra, Pág. 1159. Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987). La parte afectada debe demostrar que con base en la prueba presentada, claramente la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.

Con respecto de las determinaciones de derecho, este foro ha decretado que las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas en todos sus aspectos por el tribunal, sin

sujeción a norma o criterio alguno. *Véase*, Miranda v. Comisión Estatal de Elecciones, 141 D.P.R. 775 (1996), además, LPAU, sec. 4.5, 3 L.P.R.A. § 2175 (1992). Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio.     Al contrario, hemos reiterado consistentemente-antes y después de la vigencia de la LPAU-que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos.     Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 2000 TSPR 83, res el 12 de junio de 2000.   a la Pág. 1266.

El criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida.  Así pues, al realizar su función revisora el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí.  Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.   La deferencia reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1987).

Según expuesto en <u>Adorno Quiles v. Hernández</u>, 126 D.P.R. 191 (1990), a la Pág. 195, "al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". *Véase además*, <u>Quiñones v. San Rafael Estates, S.E.</u>, 143 D.P.R. 756 (1997); <u>Álvarez v. Junta de Directores, Cond. Villa Caparra</u>, 140 D.P.R. 763 (1996); <u>Fuertes v. A.R.P.E.</u>, *supra*.

Finalmente, el foro judicial podrá sustituir el criterio del organismo administrativo por el propio, sólo en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. **No obstante, es axioma judicial que ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio.** <u>Dye Tex de P.R. v. Royal Ins. Co.</u>, 2000 TSPR 54, res. el 27 de marzo de 2000; <u>Rodríguez Roldán v. Municipio de Caguas</u>, 133 D.P.R. 694 (1993).

Aclarado el alcance de nuestra función revisora, evaluemos los señalamientos de error indicados por la parte recurrente.

III

La controversia de autos es relativamente sencilla. En síntesis, procede resolver si los daños al vehículo de la

Sra. Rebollo Vda. de Liceaga están cubiertos por la garantía que le fue otorgada al comprar el auto.

La garantía ofrecida por Yiyi Motors y Motor Ambar, Inc. para el vehículo de la Sra. Rebollo Vda. de Liceaga dispone, en lo pertinente:

> Nissan le ofrece una **ventajosa** garantía, la cual se explica **detalladamente** en el manual 'Información de Garantía de los Nuevos Vehículos Nissan'. La misma incluye:
>
> **5 años contra perforaciones por corrosión.**
> ...
>
> **La pintura y corrosión superficial o cosmética está cubierta por el período de la garantía básica de 3 años o 36,000 millas, lo que ocurra primero.**
> ...

La garantía señala además que:

> **Cualquier panel de chapa metálica de la carrocería que haya sufrido una perforación debido a la corrosión durante el uso normal está cubierta durante 60 meses, sin importar la cantidad de millas recorridas.**

Esta garantía no cubre:

> **Daños, fallos o corrosión como consecuencia de: picaduras de piedra, precipitación de productos químicos, savia de árboles, <u>sal</u>, granizo, tormentas de tierra, tormentas eléctricas y otras condiciones ambientales.**

De entrada debemos advertir que la propia Nissan caracterizó la garantía como una *ventajosa* y *detallada*. En la misma se ofrece, sin calificación ulterior, 5 años contra perforaciones por corrosión. Seguidamente, la propia garantía dispone las excepciones y limitaciones de dicha garantía de 5 años. Así, resalta que la garantía sobre la

pintura y corrosión <u>superficial</u> o <u>cosmética</u> se limita a 3 años o 36,000 millas, lo que ocurra primero.

Cabe señalar que la corrosión en los vehículos se clasifica en tres categorías: funcional, estructural y cosmética. El daño es estructural y/o funcional cuando la corrosión causa una pérdida en el desempeño operacional o en la integridad estructural del vehículo. Ejemplos de esto son las perforaciones en los paneles estructurales, corrosión en el sistema de frenos y deterioro en la armadura que sostiene el parachoques. La corrosión cosmética, por otra parte, afecta meramente la apariencia del vehículo, como por ejemplo, las manchas de moho en los paneles pintados, y la decoloración o picadura en las molduras metálicas.[1]

Es ineludible concluir pues, que la garantía principal de 5 años subsiste contra otros problemas de corrosión adicionales a los superficiales y cosméticos, [como serían los estructurales y/o funcionales], incluyendo pero no limitado a "cualquier panel de chapa metálica de la carrocería que haya sufrido una perforación debido a la corrosión durante el uso normal, [la cual] está cubierta durante 60 meses, sin importar la cantidad de millas recorridas".

---

[1] Automotive News, <u>Effects of Road Salt on Motor Vehicles and Structure</u>; Transportation Research Board, Washington (1994), Chapter 3 Pág. 31. (http://ntl.bts.gov/DOCS/HS-041_382/HS-041_382.htm).

La única otra limitación que contiene el manual de garantía es que la misma no cubre daños, fallos o corrosión como consecuencia de: picadura de piedras, precipitación de productos químicos, savia de árboles, **sal**, granizo, tormentas de tierra, tormentas eléctricas, y otras condiciones ambientales. (traducción del inglés).

En sus escritos, Yiyi Motors y Motor Ambar Inc., alegaron que la corrosión del vehículo de la querellada fue causada por "exposición excesiva al **salitre**", uno de los elementos, según ellos, específicamente excluidos de la garantía (sal). Así, estiman que no son responsables de la reparación del vehículo de la Sra. Rebollo Vda. de Liceaga. No le asiste la razón a los querellados-recurridos.

De entrada, es menester destacar que sal y salitre, científicamente (químicamente) hablando, no son lo mismo. Por el contrario, son sustancias y palabras que acuñan conceptos diferentes. El primero en un compuesto de cloruro de sodio (NaCl), de sabor característico, que se extrae de las aguas del mar y se utiliza universalmente para condimentar; mientras que el segundo es un mineral blanco, translúcido y brillante compuesto por nitrato de potasio (KNO3) que se encuentra en forma de agujas o polvillo en la superficie de terrenos húmedos o salinos. *Diccionario de la Real Lengua Española, Vigésima segunda Edición*. Tanto el *potasio* que se encuentra en el salitre como el *sodio* que se encuentra en la sal, son sustancias salinas que pueden

causar corrosión; sin embargo, los compuestos *per se* son distintos. El mero hecho de que ambos puedan causar corrosión en superficies metálicas, no implica que son sustancias homogéneas.

Debemos destacar que la garantía que ofrecen Yiyi Motors y Motor Ambar, Inc. en Puerto Rico es una traducción literal de la garantía ofrecida por Nissan en los Estados Unidos de América. La misma lee así:

> This warranty does not cover damage or failures resulting directly or indirectly from any of the following: airborne chemicals, tree sap, road debris (including stone chips), rail dust, **salt**, hail, floods, wind storms, lightning and other environmental conditions.

Tomamos conocimiento judicial que en los Estados Unidos se utiliza la sal (cloruro de sodio) para derretir la nieve y el hielo que se acumula en las carreteras en los meses de invierno. Es de conocimiento general además, que dicha sustancia es altamente corrosiva. "The proliferation of rusted-out vehicles in many northern states identifies road salt (cloruro de sodio) as a major cause of automotive corrosion." (énfasis nuestro). De hecho, **"the expanded use of road salt has historically been the driving force behind corrosion protection"**. (énfasis nuestro). *Id.*, a las páginas 33 y 38. Es decir, la proliferación en el uso de la sal para derretir el hielo y la nieve en las carreteras, y la naturaleza altamente corrosiva de dicha sustancia han

sido la fuerza propulsora de la exclusión que de ordinario tienen las garantías de los vehículos contra la corrosión.

Reconocemos que existen *innumerables* tipos de sales en nuestro ecosistema,[2] muchas de las cuales pueden causar corrosión al ponerse en contacto con metales. No obstante, en este contexto señalamos que cuando la garantía automotriz incluye la sal como uno de los elementos de exclusión, se refiere a la sal (cloruro de sodio) que se utiliza en las carreteras en los meses de invierno, y no al salitre (potasio de nitrato) que se encuentra en las áreas costeras y en las superficies húmedas.

Según esbozamos anteriormente, existen numerosas sustancias salinas en el ambiente. Difícilmente puede colegirse que cuando Nissan excluyó de la garantía contra corrosión aquella causada por la sal, se haya referido a todos los compuestos salinos que existen en la naturaleza. Dicha interpretación, sin más, haría ineficaz e inexistente la garantía por corrosión ofrecida a los consumidores. Si avalamos la posición de los querellados de que "sal", en su acepción más amplia, incluye *todos* los elementos y compuestos que contengan algún tipo de sal, la excepción derrotaría la regla y no habría garantía alguna contra la corrosión. No podemos sostener una interpretación de tal envergadura. La misma no sólo sería irrazonable, sino que además sería contraria a la clara política pública de

---

[2] A modo de ejemplo, existen sales en la tierra y en las plantas.

proteger a los consumidores de vehículos de motor nuevos y usados, frente a los intereses del manufacturero y el distribuidor o vendedor. Ley Núm. 7 de 24 de septiembre de 1979, mejor conocida como la Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec.2051 *et seq*.

Si los manufactureros y distribuidores de vehículos de motor pretenden excluir de la garantía contra corrosión aquella acaecida por causa del salitre, deben así especificarlo en sus manuales de garantía. No podemos pretender que el consumidor promedio, aquel que no tiene conocimientos en el área de las ciencias, deduzca que cuando una garantía mencione la *sal* como una de sus excepciones, está en efecto excluyendo <u>todos</u> los elementos salinos que se encuentren en el ecosistema. Mucho menos podemos pretender que dicho consumidor interprete, erróneamente, que el nitrato de potasio es lo mismo que el cloruro de sodio, y que conciba que ambas están igualmente excluidas de la garantía contra corrosión. Máxime cuando la gran mayoría de estos contratos son contratos de adhesión preparados por los propios distribuidores. Puerto Rico es una isla rodeada por mar, por tanto, es inexplicable que una garantía supuestamente **detallada** exhiba tal omisión.[3]

---

[3] En cuanto a la abarcadora frase "y otras condiciones ambientales", estimamos que no puede decirse que la misma implique que la corrosión por salitre está excluida. Difícilmente una frase tan amplia corresponda al "detalle" del Manual de Información de Garantía". Lo menos que podemos precisar, es que es una frase ambigua e imprecisa, y por tanto, para todos los efectos prácticos, inválida.

IV

En el caso de marras, la Sra. Rebollo Vda. de Liceaga compró un vehículo marca Nissan, modelo Máxima del año 1997. Como parte de dicho negocio se le ofreció una "ventajosa" y "detallada" garantía que proveía, entre otras cosas, una garantía de 5 años contra perforaciones por corrosión, <u>excepto</u> la pintura y corrosión superficial o cosmética que sólo está cubierta por el período de la garantía básica de 3 años o 36,000 millas. Por último, la garantía dispone que no cubre por daños, fallos o corrosión que sean consecuencia de picaduras de piedra, precipitación de productos químicos, savia de árboles, sal, granizo, tormentas de tierra, tormentas eléctricas y otras condiciones ambientales.

Según decretamos anteriormente, la corrosión como consecuencia del *salitre* no está expresamente contenida en el listado de las excepciones a la garantía. Así, y en vista de que la reclamación se hizo antes de los 5 años que dispone el Manual de Información de Garantía, la reparación de las partes corroídas estaba vigente. Poco importa si la corrosión fue consecuencia del salitre o si, según destacó el perito de la querellante, fue consecuencia de un baño de agua salada durante su travesía en alta mar. No se probó que la corrosión fuese causada por alguno de los elementos o circunstancias expresamente excluidas de la garantía, por ende no existe razón para no hacer valer la misma. De

hecho, en la vista administrativa las querelladas Yiyi Motors y Motor Ambar Inc. no ofrecieron prueba testifical ni documental alguna para sostener sus alegaciones de que la corrosión fue causada por exposición excesiva al salitre. Ni siquiera rebatieron la prueba presentada por la señora Rebollo Vda. de Liceaga y su perito, siendo ese el momento idóneo para refutar las imputaciones que ésta hiciera.

Por las razones antes expuestas se revoca la sentencia del Tribunal de Apelaciones, y se ordena a las partes querelladas honrar la garantía ofrecida, y a tales efectos reparar y/o sustituir, en cuanto sea necesario, las piezas corroídas del vehículo de la Sra. Rebollo Vda. de Liceaga.

Se dictará la Sentencia correspondiente.


                         FEDERICO HERNÁNDEZ DENTON
                                Juez Asociado

En el Tribunal Supremo de Puerto Rico


Socorro Rebollo Vda. de Liceaga

    Querellante

                              CC-2002-743   Certiorari

        v.

Yiyi Motors, Motor Ambar, Inc

    Querellada


SENTENCIA


En San Juan, Puerto Rico, a 13 de enero de 2004.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal de Circuito de Apelaciones, y se ordena a las partes querelladas honrar la garantía ofrecida, y a tales efectos reparar y/o sustituir, en cuanto sea necesario, las piezas corroídas del vehículo de la parte querellante.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López inhibido.


                    Patricia Otón Olivieri
                Secretaria del Tribunal Supremo