# 2008 DTA 78

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL IV**

PUERTO RICAN INSURANCE AGENCY, INC.
Recurrente

v.

COMISIONADO DE SEGUROS DE PUERTO RICO
Recurrida

Núm. KLRA-2007-01373

San Juan, Puerto Rico, a 30 de mayo de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente Puerto Rican Insurance Agency, Inc. (PRIA), comparece ante este Tribunal de Apelaciones solicitando que revoquemos una resolución de la Oficina del Comisionado de Seguros (OSC), dictada el 30 de noviembre de 2007, y notificada el 3 de diciembre siguiente, referente al Caso Número E-2003-131. Mediante dicha resolución, la Comisionada de Seguros declaró sin lugar una Moción de Reconsideración instada por PRIA.

Con el beneficio de la comparecencia de las partes y del derecho aplicable, estamos en posición de disponer del recurso, lo que a continuación hacemos.

### I

De conformidad con las disposiciones del Artículo 2.150 del Código de Seguros de Puerto Rico, 26 L.P.R. A. sec. 215, la OCS examinó las operaciones y transacciones de PRIA con el propósito de determinar si ésta condujo sus negocios de seguros de líneas excedentes en cumplimiento con las disposiciones del Código de Seguros de Puerto Rico, del Reglamento de dicho Código y de la Carta Normativa Número E-2003-131, de 7 de febrero de 2003. El referido examen de las operaciones de PRIA cubrió el período comprendido del 1 de noviembre de 2000 al 31 de diciembre de 2002.

El 22 de julio de 2005 le fue notificado a PRIA copia del *"Informe de Examen"* con los resultados del mismo. Oportunamente, PRIA objetó varios de los señalamientos del informe y solicitó vista administrativa.

El 29 de marzo de 2006, las partes presentaron ante el foro administrativo de la OCS un *"Informe de Conferencia entre las Partes y Solicitud de Adjudicación Mediante Procedimiento Sumario"*, en el cual estipularon los hechos relevantes a la adjudicación de los señalamientos del *"Informe de Examen"* objetados por PRIA. En el mismo solicitaron, además, término para presentar memorandos de derecho en cuanto a los asuntos en controversia. [1]

El 7 de junio de 2006, cada una de las partes presentó su respectivo memorando de derecho, quedando el caso sometido para adjudicación.

El 13 de agosto de 2007, notificada el 15 de agosto siguiente, la Comisionada de Seguros de Puerto Rico

emitió su Resolución. En ésta determinó, entre otras cosas, que PRIA había incurrido en múltiples violaciones al Código de Seguros de Puerto Rico y al Reglamento de dicho Código, por lo que se le impusieron multas administrativas ascendentes a $251,425.

El 4 de septiembre de 2007, PRIA presentó un escrito intitulado *"Moción para que se deje sin efecto Resolución por falta de jurisdicción y/o Solicitud de Reconsideración"*. En la misma solicitó se dejara sin efecto la referida Resolución, alegando que en ésta se cometieron varios errores.

El 6 de septiembre de 2007, el foro administrativo emitió Resolución en la que concedió a la representación legal del interés público un término para expresarse en cuanto a la moción presentada por PRIA. El 26 de septiembre siguiente, dicha representación presentó ante el foro administrativo *"Oposición a Solicitud de Reconsideración"*.

El 16 de octubre de 2007, PRIA presentó *"Réplica a Oposición de la Oficina del Comisionado de Seguros a la Solicitud de Reconsideración"*.

El 30 de noviembre de 2007, notificada el 3 de diciembre siguiente, la Comisionada de Seguros declaró sin lugar la reconsideración solicitada.

Inconforme, PRIA comparece ante este foro judicial.

## II

En su petición de revisión, PRIA señala los siguientes errores en el dictamen de la Comisionada de Seguros:

*"Erró la Oficina del Comisionado de Seguros, por conducto de su Comisionada Dorelisse Juarbe Jiménez, al negarse a desestimar el caso contra PRIA, a pesar de estar clara que su actuación era ultra vires, y en la alternativa, sin causa justificada.*

*Erró la Oficina del Comisionado de Seguros, al imponer una multa administrativa basada en la conclusión de que PRIA violentó la Carta E-N-12-1275-95 de enero de 1996 aunque en ningún sitio se dispone una penalidad por el incumplimiento con dicha carta normativa.*

*Erró la Oficina del Comisionada de Seguros, al negarse a reconsiderar la decisión de imponer una multa administrativa por la suma de $250,425 y la conclusión que PRIA violentó el Artículo 3 de la Regla XXVIII de su reglamento, y erró al basar su decisión en el lenguaje de una Carta Normativa, a pesar que las cartas normativas no son una disposición específica del Código de Seguros, ni del Reglamento."*

Los errores señalados por PRIA pueden contraerse a determinar si la OCS actuó ultra vires al haber emitido una resolución final en exceso del término de 60 días dispuesto para ello en el Artículo 2.25 del Código de Seguros, 26 L.P.R.A. sec. 225.

De haberse emitido la resolución intra vires, debemos entonces determinar si, a la luz de la legislación aplicable, los reglamentos y la evidencia contenida en el expediente administrativo, procedía la imposición de las multas por parte de la OCS.

## III

### A

En repetidas ocasiones, nuestro Tribunal Supremo ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan

con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Accumail de P.R. v. Junta*, 170 D.P.R. ___ (2007), **2007 J.T.S 75**; *Municipio de San Juan v. Plaza Las Américas*, 169 D.P.R. ___ (2006), **2006 J.T.S. 164**; *López v. Administración*, 168 D.P.R. ___ (2006), **2006 J.T.S. 146**; *Hernández v. Centro Unido*, 168 D.P.R. ___ (2006), **2006 J.T.S. 140**; *Comisionado de Seguros v. Puerto Rican Insurance Agency*, 168 D.P.R. ___ (2006), **2006 J.T.S. 142**; *Martínez v. Rosado*, 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Polanco v. Cacique Motors*, 165 D.P.R. ___ (2005), **2005 J.T.S. 101**; *Otero v. Toyota*, 163 D.P.R. 716 (2005); *Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *López v. Administración, supra; Camacho v. A.A.F.E.T.,* 168 D.P.R. ___ (2006), **2006 J.T.S. 97**; *Rebollo v. Yiyi Motors, supra.* Los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387, 397 (1999).

Las determinaciones de hechos de los organismos y agencias *"tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas".* *Vélez v. A.R.P.E.,* 167 D.P.R. ___ (2006), **2006 J.T.S. 78**; *Camacho v. A.A.F.E.T., supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987); *Facultad v. Consejo de Educación Superior, supra,* pág. 532.

**B**

Por tratar el presente caso de las actividades de un Corredor de Seguros de Líneas Excedentes, debemos dejar establecido el ámbito funcional de este profesional de acuerdo con la legislación sobre seguros.

El Código de Seguros define *"Corredor"* como la persona nombrada por un asegurador para gestionar solicitudes de seguros o negociar seguros en su nombre, y si fuere autorizada para ello por el asegurador, para efectuar y refrendar contratos de seguros. Código de Seguros, Artículo 9.020, 26 L.P.R.A. sec. 902.

En el Artículo 10.070, 26 L.P.R.A. sec. 1007, se define el *"Seguro de Líneas Excedentes"* como:

*"Cualquier parte o la totalidad de una cubierta de seguro que no pueda obtenerse de aseguradores autorizados, cubierta que en adelante se designará en este título como "seguros de líneas excedentes", podrá obtenerse de aseguradores no autorizados, siempre que:*

*1. El seguro no pueda obtenerse de aseguradores autorizados, o ha sido obtenido hasta el máximo que dichos aseguradores están dispuestos a asegurar; y*

*2. dicho seguro se obtenga mediante un corredor autorizado de seguros de líneas excedentes, en adelante llamado en este capítulo "corredor"; y*

*3. el seguro con un asegurador no autorizado no se procure o requiera con el fin de obtener ventajas, bien en cuanto al tipo de primas, o en cuanto a los términos de contrato de seguros, y*

*4. el seguro se obtenga de aseguradores no autorizados elegibles con arreglo al Artículo 10071 de esta Ley."*

**C**

El Artículo 3 de la Regla XXVIII del Reglamento del Código de Seguros dispone lo siguiente en relación a

141

la presentación de informes requeridos por la OCS a los corredores de seguros excedentes:

*"El corredor de seguros de líneas excedentes presentará el informe y el pago de la contribución sobre primas de seguros de líneas excedentes requeridos respectivamente por los Artículos 10.080 y 10.130 del Código de Seguros de Puerto Rico en el modelo diseñado por la Oficina del Comisionado de Seguros, para lo cual utilizará uno de los siguientes métodos:*

*i. Presentar el informe y el pago de la contribución para cada cubierta de seguros de líneas excedentes obtenida dentro de un período no mayor de sesenta (60) días, contado a partir de la fecha de vigencia de la póliza o del resguardo provisional, o de la fecha de confirmación de cubierta del seguro de líneas excedentes, de estas dos fechas la que ocurra primero, o ...*

*ii. Presentar un informe anual, dentro de los sesenta (60) días siguientes a la terminación de cada año calendario, contentivo de todas las cubiertas de seguros de líneas excedentes obtenidas durante el año calendario inmediatamente precedente a la presentación del informe. Este informe incluirá el pago de contribución sobre primas correspondiente a todas las cubiertas colocadas como seguro de líneas excedentes durante dicho año calendario.*

*b. El corredor de seguros de líneas excedentes informará al Comisionado de Seguros, previo a su utilización, el método que ha de utilizar para la presentación del informe y el pago de la contribución sobre primas al que se refiere el apartado (a) de este Artículo.*

*Si el corredor de seguros de líneas excedentes escogiera presentar su informe y efectuar el pago de la contribución sobre primas anualmente, deberá mantener vigente una fianza de garantía financiera o un certificado de depósito, cedido fiduciariamente al Secretario de Hacienda de Puerto Rico, para responder por el pago a tiempo de la referida contribución. La garantía aquí requerida, sea la fianza o el certificado, deberá ser equivalente al 10% del total de primas correspondientes a los seguros de líneas excedentes gestionados por el corredor de seguros de líneas excedentes durante el año calendario anterior, pero nunca será menor de $25,000...".*

Los siguientes Artículos 5 y 6 del referido Reglamento establecen los términos para la presentación de un Informe Anual y las penalidades en caso de incumplimiento, al disponer lo siguiente:

*"Artículo 5. Informe Anual*

*Dentro de los sesenta (60) días siguientes a la terminación de cada año calendario, todo corredor de seguros de líneas excedentes rendirá el informe de pérdidas requerido por el Artículo 10.140(3) del Código de Seguros de Puerto Rico en los modelos que el Comisionado de Seguros diseñe para este propósito. En aquellos casos en que no haya habido transacción alguna, se rendirá el informe haciendo una indicación al efecto.*

*Artículo 6. Penalidades*

*Si un corredor de seguros de líneas excedentes no cumpliere con el procedimiento establecido por esta Regla para la circulación de los riesgos, el Comisionado de Seguros, además de cualquier otra penalidad dispuesta en el Código de Seguros de Puerto Rico, le suspenderá su licencia de corredor de seguros de líneas excedentes."*

El Artículo 10.131 del Código de Seguros, 26 L.P.R.A. sec. 1013a, especifica que:

*"Todo corredor de líneas excedentes que dejare de presentar su informe sobre la cubierta de seguro de líneas excedentes y dejare de pagar la contribución especificada dentro del término establecido en el Artículo 10.130, estará sujeto a una multa administrativa de veinticinco (25) dólares por cada día de atraso, sujeto al derecho del Comisionado de conceder una prórroga razonable para presentación y pago."*

En relación a la multa administrativa dispuesta en este artículo, el Tribunal Supremo ha reconocido que es ésta la sanción específica que dispuso el legislador para los casos de atrasos en el pago de contribuciones sobre cubiertas de líneas excedentes y que la OCS no puede variar la misma. *Comisionado v. Prime Life*, 162 D.P.R. 334 (2004).

## IV

Analicemos ahora los planteamientos de las partes sobre los errores señalados por la parte recurrente.

## A

PRIA sostiene que la resolución de la cual recurre fue emitida transcurrido el término, alegadamente jurisdiccional, establecido en el Artículo 2.25 del Código de Seguros, supra. Alega, en síntesis, y a tenor con el citado artículo, que la agencia disponía de 60 días para resolver la querella en su contra. Por lo tanto, habiendo transcurrido en exceso de dicho término, su actuación fue una ultra vires. En la alternativa, plantea que la OCS no tuvo causa justificada para emitir su resolución de manera tardía. [2] No le asiste razón.

De una lectura de dicho artículo puede concluirse que el término establecido en el mismo no es uno jurisdiccional. Éste dispone lo siguiente:

*"(1) El Comisionado llevará una minuta exacta y concisa de los procedimientos en todas las vistas.*

*(2) Dentro de sesenta días después de terminada la vista, el Comisionado emitirá resolución sobre la misma exponiendo la acción que ha tomado y la fecha de efectividad de tal acción, con un resumen de sus conclusiones en apoyo a la misma. El Comisionado entregará copia de dicha orden a cada persona a quien se notificó la vista."*

No existiendo jurisprudencia interpretativa del mencionado artículo, consideraremos, por analogía, el término provisto como uno directivo bajo parámetros similares aplicables en las secs. 3.13 (g) y 3.14 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. secs. 2163 (g) y 2164.

Sobre dichos términos, el Tribunal Supremo expresó en *J. Exam. Tec. Med. v. Elías et al,* 144 D.P.R. 483 (1997), lo siguiente:

*"La lectura de las referidas disposiciones de la LPAU, posibilita concluir que el término de seis (6) meses para resolver un caso no es jurisdiccional. Se considera que la agencia administrativa ha resuelto un caso cuando ha emitido una decisión final. Si el término para que la agencia emita su decisión final puede ser extendido con el consentimiento de las partes o por causa justificada, a fortiori el término de seis (6) meses para resolver un caso puede ser prorrogado. Cuando los términos pueden ser prorrogados, su mandato tiene que ser considerado como directivo, ya que los términos jurisdiccionales no son prorrogables."* Véase, *Aponte v. Policía de P.R.,* **143 D.P.R. 75 (1996).**

En *Febles et al. v. Romar Pool Const.,* 159 D.P.R. 714 (2003), el Tribunal Supremo explicó el concepto de *"causa justificada"*. A tales efectos expresó:

*"A diferencia de un término jurisdiccional, un término de cumplimiento estricto se puede extender. Sin*

*embargo, esto se puede hacer solamente cuando la parte que lo solicita demuestra justa causa para la* *tardanza. La acreditación de justa causa se hace con explicaciones concretas y particulares, debidamente* *evidenciadas en el escrito que le permitan al tribunal concluir que hubo una excusa razonable para la* *tardanza o demora. Las vaguedades y las excusas o planteamientos estereotipados no cumplen con el* *requisito de justa causa." Citas omitidas.*

En resumen, en ambos supuestos, [3] los términos dispuestos tienen que ser interpretados como directivos y no jurisdiccionales.

En este caso, la Comisionada de Seguros, en su Resolución en reconsideración, emitida el 30 de noviembre de 2007, expresó lo siguiente:

*"En el caso de autos, la OCS enfrentó causas excepcionales que justificaron la demora en la emisión de* *la Resolución de 13 de agosto de 2007. La escasez de recursos humanos, el cúmulo de casos, activos y* *pendientes, las tareas adicionales asignadas a los oficiales examinadores, el cierre temporero del Gobierno y* *la mudanza de las oficinas de la OCS, repercutieron en la congestión de trabajo, lo que resultó en la dilación* *de la adjudicación del caso de epígrafe. Además, las múltiples controversias envueltas en el presente caso* *son un factor adicional que repercutió en el tiempo en el cual se adjudicó el caso de autos."*

A esto añadió:

*"Si bien las partes presentaron sus estipulaciones sobre hechos relevantes a las controversias, dichas* *estipulaciones no disponían del presente caso. Tanto del Informe de Examen, como del informe entre las* *partes, se desprende claramente que el caso de epígrafe envolvía un número extenso de señalamientos a* *violaciones al Código de Seguros de Puerto Rico, sobre las cuales las partes expusieron 13 controversias en* *total. Lo anterior, en adición a que las partes sometieron prueba documental sobre la cual fue necesario* *pasar juicio."*

Es nuestro criterio que las circunstancias anteriormente expresadas por la OCS también constituyeron justa causa para la demora en resolver el caso, por lo que el término disponible para la agencia resolverlo quedó prorrogado. Por tanto, la actuación de ésta no fue una ultra vires. No se cometió el error señalado.

**B**

Por estar íntimamente relacionados, procederemos a discutir en conjunto los restantes errores señalados.

En su recurso de revisión, PRIA alega que la OCS actuó sin autoridad al imponerle una multa administrativa por incumplir con la Carta Normativa E-N-12-1275-95, cuando no existe disposición de ley que disponga penalidades por incumplir con la misma. De igual manera, cuestiona que la OCS haya basado sus imputaciones de violaciones al Artículo 10.130 del Código de Seguros, supra, a la Regla XXVIII, supra, y a la Carta Normativa, toda vez que ésta no es una disposición específica del Código de Seguros, ni del Reglamento. Con este señalamiento, PRIA cuestiona la validez legal de la referida Carta Normativa.

Comenzaremos señalando que la Carta Normativa Núm. E-N-12-1275-95 fue emitida por la OCS el 9 de enero de 1996. Dicha carta estableció un nuevo procedimiento para la circulación de riesgos que se deseen colocar como seguros de líneas excedentes y para el pago de la contribución sobre primas correspondientes.

El Artículo 9.460(b) del Código de Seguros, 26 L.P.R.A. sec. 946 (b), establece lo siguiente:

*"El Comisionado podrá denegar, suspender, revocar o negarse a renovar una licencia expedida con* *arreglo a este capítulo, la de corredor de seguros de líneas excedentes, o la de agente general, por* **cualquier**

*causa especificada en las disposiciones de este título por cualquiera de los siguientes motivos:*

*a. ...*

*b. Por violar intencionalmente, dejar de cumplir o participar a sabiendas en la violación de cualquier disposición de este título, o de cualquier regla, reglamento u orden legal del Comisionado...".* (Subrayado nuestro)

Lo dispuesto en el citado artículo demuestra que el legislador autorizó al Comisionado de Seguros a imponer sanciones administrativas a cualquier persona que viole intencionalmente, no tan sólo disposiciones del Código de Seguros o de su Reglamento, sino al que violare cualquier orden legal del Comisionado. Un examen de la Carta Normativa Núm. E-N-12-1275-95 nos permite concluir que su contenido trata de una orden legalmente emitida por el Comisionado de Seguros.

De otra parte, nos señala PRIA que erró la OCS al negarse a reconsiderar la decisión de una multa administrativa por la suma de $250,425. Asimismo, considera que la OCS incidió al llegar a la conclusión de que se violentó el Artículo 10.130 del Código de Seguros y el Artículo 3 de la Regla XXVIII, *supra*.

Comencemos por apuntar que PRIA señala que el Artículo 10.130, *supra*, y la Regla XXVIII, supra, tienen un lenguaje distinto, por lo que están en conflicto. Esto, para justificar su alegación de que no se le debió imponer una multa administrativa por violación al Artículo 3 de la Regla XXVIII, supra. Recordemos que PRIA sostiene que la OCS se basó en el lenguaje de la Carta Normativa E-N-12-1275-95 al momento de imponer la misma.

Ante semejante argumento, nos hacemos eco de lo dicho por la Comisionada de Seguros en su resolución de 13 de agosto de 2007, notificada el 15 de agosto siguiente. En lo pertinente dicha resolución señala que:

*"El Artículo 10.130, supra, establece una forma de presentar el informe y el pago de la contribución sobre primas. Conforme al referido artículo de ley, el informe y el pago de contribución sobre primas debe realizarse dentro de los sesenta días de obtenida cada cubierta de seguros de líneas excedentes. El Código de Seguros de Puerto Rico no contempla la presentación del informe de pago de contribuciones sobre primas sobre una base anual y global. La Regla XXVIII, supra, sin embargo, viene a complementar la antes referida disposición.*

*La Regla XXVIII, supra, contempla dos alternativas distintas para la presentación del informe y el pago de la contribución sobre primas. Una de las alternativas es la que provee el Código de Seguros de Puerto Rico, conforme a la cual, para cada cubierta de seguros de líneas excedentes, el Corredor deberá presentar el informe y el pago de la contribución sobre primas correspondiente dentro de un período no mayor de sesenta días, contado a partir de la fecha de vigencia de la póliza o del resguardo provisional, o de la fecha de confirmación de la cubierta del seguro, lo que ocurra primero. En cuanto a esta alternativa, el Código de Seguros dispone que el término de sesenta días comienza a contar después de obtenida la cubierta de seguros. Sobre este particular, la Regla XXVIII, supra, aclara que "después de obtenida la cubierta de seguros", quiere decir, contado a partir de la fecha de vigencia de la póliza o resguardo provisional, o de la fecha de confirmación de la cubierta del seguro, la fecha que ocurra primero."*

Como bien señalara la Comisionada de Seguros, las referidas disposiciones se complementan, por lo que no están en conflicto como asegura PRIA.

Por último, procede que mantengamos en pleno vigor la multa de $250,425 que le fuera impuesta a PRIA. La multa fue impuesta correctamente a tenor con el Artículo 10.130, *supra*, y al Artículo 3 de la Regla XXVIII,

*supra*, al PRIA haberse atrasado un total de 10,017 días en el pago de la contribución sobre primas. Dicha sanción está ampliamente justificada por la prueba que obra en el expediente administrativo.

Las determinaciones de los organismos administrativos, cuando se fundamentan en una base racional, merecen la mayor deferencia judicial. Véase *Accumail de P.R. v. Junta, supra; Municipio de San Juan v. Plaza Las Américas, supra; López v. Administración, supra; Hernández v. Centro Unido, supra; Comisionado de Seguros v. Puerto Rican Insurance Agency, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Rebollo v. Yiyi Motors, supra.* Procede la confirmación de la resolución recurrida.

## V

Por los fundamentos antes expuestos, se confirma la resolución recurrida.

Así lo pronunció el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 78

**1.** En la vista celebrada, el interés público fue representado por un abogado de la División de Asuntos Legales de la OCS.

**2.** PRIA también alegó haber sufrido perjuicios financieros a consecuencia de la dilación de la OCS en emitir su dictamen. No obstante, a pesar de esto, PRIA no presentó recurso alguno ante la tardanza de la OCS. Por el contrario, teniendo disponible el recurso de mandamus, esperó hasta emitida la resolución para impugnar la misma.

Recordemos que el Tribunal Supremo ha reconocido que el mandamus es el remedio procesal adecuado para proteger a aquella parte afectada por la dilación o tardanza injustificada de una agencia administrativa. *Lab. Clínico Guaynabo v. Depto de Salud,* 146 D.P.R. 6 (1998). Ante esta situación, era el deber de PRIA presentar el referido recurso. Esta no podía pretender que fuera la OCS quien lo presentara, toda vez que es la referida agencia la que está promoviendo la acción. De ésta haberlo hecho, hubiera estado instando una acción contra sí misma, lo que no tiene sentido.

**3.** Entiéndase, por consentimiento de las partes o por causa justificada.