ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| OMEGA OVERSEAS INVESTMENTS, INC.<br><br>Recurrente<br><br>v.<br><br>OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS<br><br>Recurrido | KLRA202400626 | *Revisión Administrativa* procedente de la Oficina del Comisionado de Instituciones Financieras<br><br>Caso Núm.: OCIF-2024-EBI-049<br><br>Sobre: Violación a las disposiciones de la Sección 17 de la Ley Núm. 52 de 11 de agosto de 1989, según enmendada, conocida como" Ley Reguladora del Centro Bancario Internacional" y el Artículo 11(2)(b) del Reglamento Núm. 5653 |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de noviembre de 2024.

Comparece Omega Overseas Investments, Inc. ("Omega" o "Recurrente") mediante *Petición de Revisión Administrativa* y nos solicita que revisemos la *Orden* emitida el 4 de septiembre de 2024, por la Oficina del Comisionado de Instituciones Financieras ("OCIF" o "Recurrida"). Mediante el referido dictamen, la OCIF le impuso a la Recurrente una multa de $1,000.00, por no radicar los estados financieros auditados del 2023 dentro del término requerido.

Por los fundamentos que expondremos a continuación, se *Confirma* el dictamen recurrido.

**I.**

El 15 de marzo de 2024, Omega le solicitó a la OCIF una prórroga para presentar sus estados financieros auditados ("EFAs"). La Recurrente especificó que, su controladora, quien estaba encargada de trabajar los asuntos de cumplimiento con la OCIF, comenzaría a laborar en Omega el

18 de marzo de 2024. Además, señaló que, sus auditores iniciarían a trabajar en la auditoría a finales del mes.

El 18 de marzo de 2024, la Recurrida concedió la solicitud del Recurrente y le concedió una prórroga hasta el 30 de junio de 2024. La OCIF añadió que, no otorgaría extensiones adicionales.

Luego, el 10 de mayo de 2024, Omega le notificó a la OCIF que no sería posible cumplir con el término concedido, dado que no tendrían disponible la información necesaria para completar los EFAs hasta septiembre u octubre de 2024.

El 2 de julio de 2024, la OCIF le requirió a Omega que indicara las razones por las cuales no entregó los EFAs dentro del plazo otorgado. Así, pues, el 9 de agosto de 2024, la Recurrente explicó que, el 18 de abril de 2024, había contratado a una firma de auditores. Omega abundó que, a partir de la contratación, se les proveyó a los auditores toda la información requerida, pero que, debido a la cantidad de inversiones de la corporación, la auditoría tomaba tiempo y aún no había culminado.

Consecuentemente, el 4 de septiembre de 2024, la OCIF dictaminó una *Orden*, mediante la cual le impuso a Omega una multa administrativa de $1,000.00, por no haber presentado los EFAs dentro del término establecido. En cumplimiento, el 11 de septiembre de 2024, Omega efectuó el pago de la sanción impuesta por la OCIF.

No obstante, el 24 de septiembre de 2024, Omega presentó una *Moción de Reconsideración*. La Recurrente adujo que, el retraso en la presentación de los EFAs se debió a la ausencia de documentos preparados por las entidades en donde la corporación tiene sus inversiones, quienes no los habían remitido en su totalidad. A su vez, sostuvo que, la demora en la contratación de la firma de auditores se debió a que había enfrentado complicaciones en la retención de empleados en las áreas de Contabilidad y Cumplimiento. Relató que, dicha complicación, impactó su capacidad de cumplir con sus responsabilidades hacia la OCIF.

Transcurridos quince (15) días, sin respuesta de la OCIF, el 8 de noviembre de 2024, Omega acudió ante esta Curia mediante *Petición de Revisión Administrativa*. Omega solicitó que, revoquemos la *Orden* de la OCIF y, como corolario, ordenemos la devolución del pago realizado, correspondiente a la multa administrativa. La Recurrente realizó el siguiente señalamiento de error:

> **Erró la OCIF al concluir que Omega violó la Sección 17 de la Ley Núm. 52 de 1989 y el Artículo 11(2)(b) del Reglamento Núm. 5653, cuando Omega logró demostrar circunstancias fuera de su control justificando una extensión en los términos aplicables, y cuyas circunstancias la OCIF nunca consideró.**

El 13 de noviembre de 2024, emitimos una *Resolución* concediéndole a la parte recurrida el término de treinta (30) días para expresarse. Sin embargo, examinado el expediente a la luz del derecho vigente, determinamos dejar sin efecto la referida orden y prescindimos del escrito en oposición, conforme dispone la Regla 7 del Reglamento de Apelaciones, 4 LPRA Ap. XXII-A, R. 7.

## II.

### -A-

La Sección 4.1 de la Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como la "*Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*" ("LPAU"), 3 LPRA sec. 9671, dispone que, las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 96, 113-114 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que, los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "*evidencia sustancial que obra en el expediente*

*administrativo*". Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra*, dispone que, "*[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal*". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "*los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra*". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, estas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra*. Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Andrea Hernández Feliciano v. Municipio de Quebradillas,* supra.

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente, o; (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**-B-**

La OCIF fue creada en virtud de la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como la *"Ley de la Oficina del Comisionado de Instituciones Financieras"* ("Ley 4-1985"), 7 LPRA sec. 2001 *et. seq.* La Ley 4-1985 le confirió a la OCIF *"la responsabilidad primordial de fiscalización y supervisión de las instituciones financieras que operen o hagan negocios en el Estado Libre Asociado de Puerto Rico"*. Artículo 3, 7 LPRA sec. 2003.

De igual manera, la Ley Núm. 52 de 11 de agosto de 1989, según enmendada, conocida como la *"Ley Reguladora del Centro Bancario Internacional"* ("Ley 52-1989"), 7 LPRA sec. 232 *et. seq.*, fue promulgada con la intención de regular la *"organización, incorporación, operación y reglamentación de entidades bancarias internacionales en Puerto Rico por la Oficina del Comisionado de Instituciones Financieras"*. El referido estatuto dispone que, la OCIF deberá *"supervisar, fiscalizar y auditar las entidades bancarias internacionales y requerir de ellas informes periódicos y otra información especificada en los reglamentos del Comisionado"*. Sección 3 (6)

de la Ley 52-1989, 7 LPRA sec. 232a. Cónsono con lo anterior, la Sección 17, 7 LPRA sec. 232m, establece lo siguiente:

> **Toda entidad bancaria internacional deberá someter al Comisionado todos aquellos informes que le sean requeridos** por los reglamentos del Comisionado, **incluyendo un estado financiero anual** preparado por contadores públicos autorizados, licenciados para practicar en Puerto Rico, así como estados financieros interinos.

(Énfasis suplido)

Atinente a la controversia ante nos, el Artículo 11 (2)(b) del Reglamento Núm. 5653 de la OCIF estipula que:

> Toda Entidad Bancaria Internacional deberá remitir al Comisionado:
>
> a. [...]
>
> b. sus estados financieros anuales auditados al cierre de su año fiscal [...] Los estados financieros deberán ser recibidos por el Comisionado **dentro de noventa (90) días del cierre del año fiscal** de la EBI [...]

(Énfasis suplido)

En caso de incumplimiento con las disposiciones de la Ley 52-1989, *supra*, o sus reglamentos, la OCIF está autorizada a imponer multas administrativas no menores de $100.00 o mayores de $10,000.00, por cada violación. Sección 20 de la Ley 52-1989, 7 LPRA sec. 232p.

**III.**

La Recurrente arguye que, la OCIF incidió al imponerle una multa administrativa, por no haber radicado sus EFAs dentro del término dispuesto por ley, a pesar de que tal incumplimiento estuvo justificado. No le asiste la razón. Veamos.

Según hemos reseñado, toda entidad financiera que opere en Puerto Rico tiene la responsabilidad de remitir ante la OCIF sus EFAs dentro de un término noventa (90) días, contados a partir desde el cierre de su año fiscal. Conforme surge del expediente, el año fiscal de Omega culminó el 31 de diciembre de 2023. El 18 de marzo de 2024, a solicitud de la Recurrente, la OCIF le otorgó una prórroga hasta el 30 de junio de 2024, para remitir los EFAs correspondientes al 2023. Resulta meritorio destacar que, al otorgar

el término solicitado, la Recurrida puntualizó que, **no concedería extensiones adicionales**.[1] (Énfasis suplido).

Sin embargo, el 10 de mayo de 2024, Omega le notificó a la OCIF que no podría cumplir con el término establecido, debido a una serie de complicaciones en obtener la información necesaria para completar los EFAs. Transcurrido el término otorgado, la OCIF le solicitó a Omega que explicara las razones de su incumplimiento. Ante ello, la Recurrente expuso que, "*[t]enemos inversiones en alrededor de 140 'private equities' en todos los continentes, excepto [Á]frica, y estamos bien diversificados. Debido a esto, la auditoría se tarda y los auditores no han terminado*".[2] Como resultado, el 4 de septiembre de 2024, la OCIF dictaminó una *Orden*, mediante la cual le impuso a Omega una multa administrativa de $1,000.00, por incumplir con el término dispuesto para presentar sus EFAs.

Contrario a lo sostenido por la Recurrente, la OCIF sí tomó en consideración las circunstancias por las cuales la entidad no podría cumplir con el término de noventa (90) días para presentar los EFAs. Por esta razón, el 18 de marzo de 2024, la Recurrida le otorgó a Omega un término adicional para ejecutar sus obligaciones. Pese a la extensión concedida, no fue hasta el 18 de abril de 2024 que Omega contrató a la firma de auditores que completaría los EFAs. En aras de que la Recurrente no fue diligente en la contratación de personal para cumplir con las obligaciones que emanan de la Ley 52-1989, *supra*, no encontramos que la OCIF erró al sancionar a la entidad, como consecuencia de su incumplimiento con su deber de remitir los EFAs.

**IV.**

Por los fundamentos que anteceden, se *Confirma* el dictamen recurrido.

---

[1] Véase, Apéndice de la Parte Recurrente, a la pág. 4.
[2] Véase, Apéndice de la Parte Recurrente, a la pág. 12.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones