ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| ILEANISSE ROMÁN TORRES<br><br>Recurrida<br><br>v.<br><br>FRANCISCO JULIO ORTIZ NIEVES<br><br>Recurrente | KLRA202500097 | *Revisión Administrativa* procedente del Departamento de la Familia, Administración para el Sustento de Menores (ASUME)<br><br>Caso Núm.: 0413033<br><br>SOBRE:<br>Alimentos |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2025.

Compareció el recurrente el Sr. Francisco Julio Ortiz Nieves (en adelante, "señor Ortiz Nieves" o "recurrente"), mediante recurso de revisión administrativa presentado el 12 de febrero de 2025. Nos solicitó la revocación de la Orden emitida por la Administración para el Sustento de Menores (en adelante, "ASUME" o "foro administrativo"), el 7 de enero de 2025 y notificada el 9 de enero de 2025. Mediante esa *Orden*, el foro administrativo denegó una solicitud de pagos para gastos extraordinarios presentada por la Sra. Ileanise Román Torres en representación de la menor nombrada por sus siglas como FEOR (en adelante, "señora Román Torres" o "recurrida").

Por los fundamentos que expondremos a continuación, se **confirma** la determinación del foro administrativo.

**-I-**

El 30 de mayo de 2004, el señor Ortiz Nieves y la señora Román Torres contrajeron matrimonio.[1] Durante su vigencia, procrearon una hija, FEOR, quien nació el 31 de marzo de 2005.

El 29 de marzo de 2007, el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, "foro primario") emitió *Sentencia* en la cual disolvió el vínculo matrimonial por la causal de ruptura irreparable.[2] Además, estableció que la custodia de la menor FEOR sería concedida a la señora Román Torres y, la patria protestad sería compartida entre ambos progenitores. Asimismo, fijó pensión alimentaria en beneficio de la menor FEOR.

Posteriormente, el 3 de septiembre de 2009, el foro primario emitió *Resolución* mediante la cual acogió las recomendaciones de la Oficial Examinadora de Pensiones Alimenticias (en adelante, "EPA").[3] En virtud de la referida *Resolución*, el señor Ortiz Nieves quedó obligado a una pensión alimenticia final de $554 mensuales y, a la aportación de un 52.49%, tanto para gastos correspondientes a la pensión suplementaria, como los gastos de regreso a la escuela.

Tras una solicitud de revisión de pensión alimentaria, el 9 de abril de 2024, ASUME celebró una reunión en la cual ambos progenitores presentaron la prueba que entendieron pertinente.[4]

Así las cosas, el 4 de junio de 2024, ASUME emitió una *Resolución sobre Revisión o Modificación de Pensión Alimentaria.*[5] El foro administrativo determinó que, conforme a la prueba presentada, la señora Román Torres tuvo los gastos suplementarios mensuales siguientes: (i) $218.75 por concepto de vivienda y (ii) $80.56 por concepto de educación. Finalmente, ASUME revisó y ordenó la pensión alimentaria como sigue. Por un lado, estableció

---

[1] Apéndice del recurrente, anejo I, pág. 3.
[2] *Íd.,* págs. 1-4.
[3] *Íd.,* anejo II, págs. 5-9.
[4] *Íd.,* anejo V, pág. 16.
[5] *Íd.,* anejo V, págs. 14-26.

que la pensión básica mensual -comprendida del 6 de marzo de 2022 hasta el 15 de marzo de 2024- era de $1,406.40. De otro lado, determinó que -a partir del 16 de marzo de 2024- la pensión alimentaria mensual era de $678.98 en total, la cual se subdividió en $487.84 para concepto de pensión básica y $191.14 para concepto de pensión suplementaria.

Luego, el 4 de diciembre de 2024, la señora Román Torres presentó *Moción Solicitud de Pago de Gastos Extraordinarios*.[6] Adujo que el señor Ortiz Nieves tenía la obligación de pagar los gastos extraordinarios no incluidos en la pensión alimentaria, como los gastos médicos y educativos. Sobre ello, incluyó una lista de los gastos suplementarios incurridos pendientes de reembolso, los cuales ascienden a $4,822.81.

En desacuerdo, el 9 de diciembre de 2024, el señor Ortiz Nieves presentó *Réplica en Oposición a Moción Solicitud de Pago de Gastos Extraordinarios*.[7] En síntesis, alegó que la pensión alimentaria actual, modificada por ASUME en junio de 2024, incluyó una cantidad fija de gastos educativos. Por ello, argumentó que la señora Román Torres pretende que pague dos veces por los gastos educativos. En cuanto a los gastos de salud, adujo que no fueron contemplados en la pensión alimentaria.

A esos efectos, ASUME emitió *Orden* el 7 de enero de 2025, notificada el 9 de enero de 2025, en la cual atendió la solicitud de la señora Román Torres como sigue:

> "No Ha Lugar. La orden de pensión alimentaria vigente se hizo retroactiva al mes de julio de 2022, y la misma contiene gastos de educación. De surgir gastos médicos no recurrentes (extraordinarios), una vez evidenciados, la persona no custodia deberá aportar a los mismos en el porciento que le corresponde". [8]

---

[6] *Íd.,* anejo VI, págs. 27-29c.
[7] *Íd.,* anejo VII, págs. 30-33.
[8] *Íd.,* anejo VIII, págs. 34-35.

Inconforme, el 9 de enero de 2025, el señor Ortiz Nieves presentó *Reconsideración en torno a Orden de 7 de enero de 2025*.[9] En ese escrito reiteró sus argumentos sobre que la pensión alimentaria vigente incluye una cantidad fija mensual para gastos educativos y nada contempla sobre gastos de salud. Incluso, sostuvo que la referida pensión no proporciona participación alguna en porcentajes como ocurría en la pensión alimentaria impuesta en el año 2009. Señaló, además, que la señora Román Torres no solicitó revisión de tal determinación de ASUME y, por tanto, la misma era final y firme. Asimismo, argumentó que la *Orden* de ASUME tuvo el efecto de enmendar la *Resolución* -que impuso la pensión alimentaria vigente- al establecerle un porcentaje de participación de gastos extraordinarios de salud. Por ello, sostuvo que ASUME se excedió de sus facultades al modificar la pensión alimentaria ante una solicitud de pago por alega deuda -presentada por la señora Román Torres- y no por una solicitud de revisión.

Así las cosas, el 13 de enero de 2025, ASUME emitió y notificó *Orden* en la que resolvió como sigue:

> "No Ha Lugar. Ver Artículo 7, inciso 5 y 15, y Artículo 20, inciso 3 de las Guías mandatorias para computar las pensiones alimentarias en Puerto Rico (Reglamento Núm. 8529 de 30 de octubre de 2014). Además, ver el Artículo 5, incisos 6 y 17, y el Artículo 17, inciso 6, de las nuevas Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico (Reglamento Núm. 9535 de 15 de febrero de 2024). Los gastos suplementarios extraordinarios no recurrentes no forman parte de la pensión alimentaria mensual, pero son reclamables cuando surgen".

Aun inconforme, el 12 de febrero de 2025, el señor Ortiz Nieves acudió ante este Tribunal mediante el recurso de epígrafe y señaló el error siguiente:

> Erró y excedió su facultad la sala administrativa al modificar la resolución de asume vigente de pensión alimentaria cuando lo que tenía ante sí era un reclamo de una alegada deuda de pensión y la recurrida nunca revisó la determinación de la agencia conforme a derecho, en violación al debido proceso de ley del recurrente.

---

[9] *Íd.,* anejo IX, págs. 37-40.

Transcurrido el término dispuesto en la Regla 63 del Reglamento de este Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63, para que la señora Román Torres presentara su alegato en oposición al recurso de epígrafe, no compareció por lo que damos por perfeccionado el recurso y procedemos a su adjudicación.

**-II-**

**A. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023).

En nuestro ordenamiento jurídico, se ha reiterado que, los tribunales apelativos conceden gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Íd.,* pág. 114. Más aun, cuando tales determinaciones son interpretaciones de las leyes que administra la agencia en cuestión. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias

administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia, tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Sobre esto, el tribunal revisor podrá modificar el dictamen administrativo si está ausente un fundamento racional que explique y justifique el criterio de la agencia. *Rolón Martínez v. Supte. Policía,* supra, pág. 36. De manera que, el criterio rector al momento de pasar juicio sobre la decisión de una agencia es la razonabilidad. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115. Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 843 (2021).

En consecuencia, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra,

pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839 (2021).

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. Guías mandatorias para computar pensiones alimentarias**

El Reglamento Núm. 8529 de 30 de octubre de 2014, según enmendado, conocido como "Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico" (en adelante, "Guías Mandatorias del 2014") tiene la finalidad de dar cumplimiento a la política pública del Gobierno de Puerto Rico para que los progenitores o las personas legalmente obligadas asuman la responsabilidad de pagar los alimentos de sus dependientes menores de edad.[10]

Conforme al Artículo 7, inciso 6 de las Guías Mandatorias del 2014, los ***alimentos*** constituyen todo aquello que es indispensable para: (i) el sustento, (ii) la habitación, (iii) el vestido, (iv) la asistencia médica, (vi) la educación e instrucción del alimentista, según el ingreso familiar.[11]

---

[10] Destacamos que el 15 de marzo de 2024 entró en vigor el Reglamento Núm. 9535 de 15 de febrero de 2024 del Departamento de la Familia, conocido como "Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico" (en adelante, "nuevas Guías Mandatorias del 2024").

[11] En cambio, el Artículo 5, inciso 6, de las nuevas Guías Mandatorias del 2024 definen a los alimentos como sigue: "todo lo indispensable para el sustento, la vivienda, vestimenta, la recreación y asistencia médica del alimentista según el ingreso familiar. Los alimentos comprenden también la educación y las atenciones de previsión acomodadas a los usos y a las circunstancias del entorno familiar y los gastos extraordinarios para la atención de las condiciones personales especiales del alimentista."

Así pues, el referido reglamento reconoce tanto la ***pensión alimentaria básica*** –la cual provee para los gastos básicos y necesarios en la crianza del alimentista–, como la ***pensión alimentaria suplementaria*** –la cual cubre los gastos suplementarios–, entre otras.[12] Por ello, las Guías Mandatorias del 2014 hacen distinción entre los gastos suplementarios y los gastos suplementarios extraordinarios.

De un lado, su Artículo 7, inciso 14, dispone que los ***gastos suplementarios*** son aquellos gastos no contemplados en la pensión alimentaria básica sobre los gastos relacionados a: (1) la educación, (2) la vivienda, (3) la salud -no cubierto por el seguro médico- y (4) el cuido del alimentista.[13] Añade, además, el Artículo 20, inciso 2 del referido reglamento, que "[e]n todos los casos en los que existan gastos suplementarios se computará una pensión alimentaria suplementaria."[14] La precitada disposición, también, detalla los pasos a seguir para computar la pensión alimentaria suplementaria.[15]

Por otro lado, su Artículo 7, inciso 15 determina que los ***gastos suplementarios extraordinarios*** son aquellos gastos no recurrentes -es decir, cuya frecuencia excede de 36 meses- aunque necesarios para la educación, salud y vivienda del alimentista.[16] En particular, el Artículo 20, inciso 3 de las Guías Mandatorias del 2014 resalta que los gastos suplementarios extraordinarios no son parte de la pensión alimentaria mensual que debe recibir el alimentista.[17]

---

[12] La misma distinción hacen las nuevas Guías Mandatorias del 2024 en su Artículo 5, incisos 32 y 35 respectivamente.

[13] Cabe mencionar que, el Artículo 7, inciso 14 de las Guías Mandatorias del 2014 es equivalente a la disposición del Artículo 5, inciso 16 de las nuevas Guías Mandatorias de 2024.

[14] Asimismo, el Artículo 20, inciso 2 de las Guías Mandatorias del 2014 es equivalente al Artículo 17, inciso 1 de las nuevas Guías Mandatorias de 2024.

[15] Véase, comentario anterior.

[16] Igualmente, el Artículo 7, inciso 15 de las Guías Mandatorias del 2014 es equivalente a la disposición del Artículo 5, inciso 17 de las nuevas Guías Mandatorias de 2024.

[17] También, el Artículo 20, inciso 3 de las Guías Mandatorias del 2014 es equivalente al Artículo 17, inciso 6 de las nuevas Guías Mandatorias del 2024.

A su vez, la precitada disposición establece que los gastos suplementarios extraordinarios se computan caso a caso y considerando lo siguiente: (1) cuantía y naturaleza del gasto; (2) capacidad económica de las personas legalmente obligadas; (3) términos y condiciones de pago relacionados con la obligación; y (4) acuerdos entre las partes sobre las necesidades suplementarias extraordinarias.[18] Por último, añade que "[u]na vez se determinada la procedencia y cantidad del gasto suplementario extraordinario se determinará la proporción que la persona custodia y la persona no custodia deben aportar [...]" a la pensión suplementaria. Véase, Guías Mandatorias del 2014, pág. 39.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En síntesis, el recurrente alegó que ASUME excedió sus facultades al modificar la pensión alimentaria vigente, toda vez que la señora Román Torres no solicitó una revisión de pensión, sino que reclamó una alegada deuda. No tiene razón. Veamos.

Ciertamente, surge del expediente que la señora Román Torres solicitó el pago de unos gastos médicos y educativos de la menor FEOR. Asimismo, se desprende del expediente que ASUME atendió la referida solicitud y resolvió que no procedían. A saber, ASUME determinó que no procedían los gastos educativos solicitados por la recurrida, debido a que la *Resolución* -emitida el 4 de junio de 2024- contenía una cantidad fija para sufragar esa necesidad en particular. En cuanto a los gastos médicos, ASUME apercibió a las partes a que, si los mismos eran no recurrentes, debían ser evidenciados.

---

[18] Véase, comentario anterior.

Según explicamos en el acápite II de esta *Sentencia,* los alimentos que se computan para establecer la pensión alimentaria básica proveen tanto para la educación como para los gastos médicos del alimentista, entre otros. En lo aquí pertinente, las Guías Mandatorias del 2014 y las nuevas Guías Mandatorias del 2024 consideran gastos suplementarios aquellos gastos médicos que no fueron cubiertos por el seguro médico. Además, los precitados reglamentos reconocen como gastos suplementarios extraordinarios aquellos gastos relacionados a la educación y a la salud que, aunque necesarios, no son recurrentes. Ambos tipos de gastos -los suplementarios y los suplementarios extraordinarios- no forman parte de la pensión alimentaria básica y, por tanto, deben ser evidenciados para que el foro adjudicador determine su procedencia.

En consideración a lo antes expuesto, resaltamos que las disposiciones precitadas no resultan ambiguas, por lo que es nuestro deber remitirnos al texto de la ley. Además, debemos recordar que nuestro marco de revisión se circunscribe a un estándar de razonabilidad.

Al examinar detenidamente el expediente, no vemos que ASUME haya modificado de alguna manera la pensión alimentaria vigente o que haya establecido algún porcentaje de participación en la pensión alimentaria para sufragar los gastos extraordinarios relacionados a la salud, según alegó el recurrente.

Nótese, pues, que ASUME denegó una solicitud de pago por gastos educativos y médicos, en conformidad con las disposiciones de la *Resolución* y las Guías Mandatorias del 2014. Es decir, ASUME mantuvo la efectividad de lo determinado en la *Resolución* emitida el 4 de junio de 2024.

Por tanto, la determinación de ASUME al denegar el pago de los alegados gastos educativos y médicos, tuvo el efecto de evitar que el recurrente pagara dos veces por lo gastos educativos de la menor

FEOR y, además, informó que se requería evidencia sobre los gastos médicos, si estos eran no recurrentes. En otras palabras, dejó en el libre albedrío de la señora Román Torres la acción de continuar su reclamo sobre los gastos médicos, pero aclaró que debía presentar evidencia, según lo requieren las Guías Mandatorias del 2014 y las nuevas Guías Mandatorias del 2024. Así pues, ASUME hizo un llamado a seguir el procedimiento requerido por los reglamentos precitados, pues estos disponen de unos pasos a seguir para determinar su procedencia y también para computar y fijar los mismos mediante una pensión alimentaria suplementaria.

Véase que, todo lo anterior fue exactamente lo que expresó ASUME tanto en la *Orden* emitida el 7 de enero de 2025, como en la *Orden* del 13 de enero de 2025. Incluso en esta última, ASUME cita correctamente las disposiciones del reglamento aplicable. Por tanto, nos parece inmeritorio el planteamiento que nos hace el recurrente.

Así las cosas, no encontramos razón alguna para no otorgarle deferencia a la determinación administrativa recurrida. Estimamos, pues que ASUME no erró ni en la aplicación de la disposición reglamentaria, ni lesionó los derechos constitucionales, ni actuó de manera arbitraria, irrazonable o ilegal. Por lo tanto, concluimos que la determinación recurrida se fundamentó en el expediente administrativo y constituyó una actuación razonable de la agencia administrativa.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la determinación de ASUME.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones