ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| ANTONIO L. VÁZQUEZ<br><br>Recurrente<br><br>v.<br><br>ADMINISTRACIÓN DE CORRECCIÓN, AGENCIA RECURRIDA<br><br>Recurrido | KLRA202500084 | Revisión procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br><br>Remedio Administrativo Núm.:<br>GMA1000-368-24<br>COD# N-14 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025.

Compareció ante este foro, el recurrente el Sr. Antonio L. Vázquez (en adelante, "señor Vázquez" o "recurrente), mediante recurso de revisión administrativa presentado el 5 de febrero de 2025.[2] Nos solicitó la revocación de la *Respuesta de Reconsideración al Miembro de la Población Correccional* emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante, "agencia administrativa" o "recurrida"), el 10 de diciembre de 2024 y notificada el 12 de diciembre de 2024. Mediante esa determinación, la agencia administrativa denegó una solicitud de reconsideración sobre una alegada correspondencia legal destinada al señor Vázquez.

Por los fundamentos que expondremos a continuación, se **confirma** la determinación de la agencia administrativa.

-I-

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.
[2] No obstante, el 23 de diciembre de 2024, el señor Vázquez entregó el recurso de epígrafe ante el Departamento de Corrección y Rehabilitación.

El 15 de agosto de 2024, el señor Vázquez —quien es miembro de la población correccional de la Institución Guayama 1000— presentó una *Solicitud de Remedio Administrativo,* número GMA1000-368-24, ante la agencia administrativa.[3] Por virtud de esta, alegó que —el 9 de agosto de 2024— la Sra. Omaira Velázquez, Técnico de Servicios Sociopenales (en adelante, "señora Velázquez") llamó al Tribunal de Primera Instancia de Bayamón (en adelante, tribunal de instancia) para corroborar algún envió de correspondencia a nombre del señor Vázquez. Adujo, además, que el tribunal de instancia indicó haber enviado cinco (5) correspondencias destinadas al señor Vázquez en las fechas siguientes: (i) 22 de junio de 2023; (ii) 19 de septiembre de 2023; (iii) 9 de noviembre de 2023; (iv) 27 de enero de 2023, y (v) en enero de 2024. Sobre esto, argumentó no haber recibido las últimas dos correspondencias, razón por la cual, solicitó que las mismas le fueran entregadas.

Evaluada la solicitud, el 25 de octubre de 2024, la agencia administrativa emitió la *Respuesta al Miembro de la Población Correccional* —notificada el 26 de noviembre de 2024— en la cual determinó como sigue:

> Se le informa que se verifico en los libros de entrada de correspondencia en y durante las fechas que usted menciona y no aparece ninguna correspondencia a su nombre y mucho menos legal.
>
> Lamentamos la situación, pero no podemos solucionarla, ya que ni siquiera podemos informarle si fue devuelta ya que en la institución no se recibió.[4]

En desacuerdo, el 28 de noviembre de 2024, el señor Vázquez presentó *Solicitud de Reconsideración*[5] en la cual alegó que las correspondencias legales fueron enviadas a la institución

---

[3] Apéndice del recurrente, anejo II, pág. 5.
[4] *Íd.,* anejo III, pág. 7-6.  A la referida determinación, la agencia administrativa anejó la *Respuesta del Área Concernida/Superintendente* del 20 de septiembre de 2024.
[5] *Íd.,* anejo III, pág. 8.

correccional 501 de Bayamón y, por tanto, sostuvo que debieron ser devueltas al tribunal de instancia o a la propia institución donde está el reo. Además, resaltó el carácter de importancia de recibir tales correspondencias, debido a que estaban relacionadas a una demanda civil.

A esos efectos, la agencia administrativa emitió *Respuesta de Reconsideración al Miembro de la Población Correccional* el 10 de diciembre de 2024 y notificó el 12 de diciembre de 2024.[6] Mediante tal determinación denegó la solicitud de reconsideración y modificó la contestación del Área de Superintendencia como sigue:

> Sr. Vázquez, en su Solicitud de Remedio expresó su preocupación por una correspondencia legal que alegadamente no ha recibido. El caso fue discutido con la Oficial de Correo. De los controles no surge que la institución haya recibido correspondencia suya en las fechas mencionadas ni cercanas a estas. También se discutió en caso en el área de Sociales. Del expediente surge que la Técnico de Servicios Sociopenales realizó la llamada al Tribunal el 9 de agosto de 2024. Le informaron que el asunto legal fue desestimado.[7]

Inconforme, el 23 de diciembre de 2024, el señor Vázquez entregó su recurso de revisión administrativa ante el Departamento de Corrección y Rehabilitación. Sin embargo, no fue hasta el 5 de febrero de 2025 que se presentó ante nos el recurso de epígrafe. Aun cuando el recurso no contiene señalamiento de error en específico, el recurrente solicitó la revocación de la *Respuesta de Reconsideración al Miembro de la Población Correccional* y reiteró sus argumentos. Solicitó, además, que se ordenara a la agencia administrativa investigar la desaparición de las referidas correspondencias legales. Asimismo, el recurrente acompaño una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia.*

Por su parte, el 28 de abril de 2025, el Departamento de Corrección y Rehabilitación acudió ante nos por medio de la Oficina

---

[6] *Íd.,* anejo I, pág. 3-4.
[7] *Íd.,* anejo I, pág. 3.

del Procurador General, mediante *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En nuestro ordenamiento jurídico, se ha reiterado que, los tribunales apelativos conceden gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Íd.,* pág. 114. Más aun, cuando tales determinaciones son interpretaciones de las leyes que administra la agencia en cuestión. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias

administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia, tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Sobre esto, el tribunal revisor podrá modificar el dictamen administrativo si está ausente un fundamento racional que explique y justifique el criterio de la agencia. *Rolón Martínez v. Supte. Policía*, supra, pág. 36. De manera que, el criterio rector al momento de pasar juicio sobre la decisión de una agencia es la razonabilidad. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 115. Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 843 (2021).

En cambio, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra,

pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839 (2021).

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. Correspondencia en Instituciones Correccionales**

El Reglamento Núm. 7594 de 24 de octubre de 2008 del Departamento de Corrección y Rehabilitación, conocido como "Reglamento de Normas para Regir la Correspondencia de los Miembros de la Población Correccional en Instituciones Correccionales y Programas de Administración de Corrección" (en adelante, "Reglamento Núm. 7594") tiene la finalidad de establecer normas y procedimientos para administrar la correspondencia de los confinados.

En particular, su Artículo V, inciso (1), reconoce el derecho de los miembros de población correccional a recibir y enviar comunicaciones escritas, siempre que cumplan con las normas y criterios adoptados. Por tanto, el Artículo V, inciso (4) del Reglamento Núm. 7594, reconoce que la correspondencia recibida en la institución correccional será objeto de monitoreo e inspección por el personal designado para ello.

A esos efectos, el Reglamento Núm. 7594 reconoce tres (3) tipos de correspondencia, a saber: (i) correspondencia general, (ii) correspondencia privilegiada o especial y (iii) correspondencia rechazada.

Primero, en su Artículo IV, inciso (3), define la *correspondencia general* como aquella que recibe o envía un confinado, la cual podrá ser abierta e inspeccionada por el personal designado para ello, excluyendo la correspondencia como privilegiada o especial.

Ahora bien, en el Artículo IV, inciso (4) del Reglamento Núm. 7594 dispone que la *correspondencia privilegiada o especial* es aquella que se recibe o se envía a tribunales de justicia federales o estatales, entre otros. Añade, además, que tal correspondencia no puede ser leída ni abierta por el personal designado, a menos que sea en presencia del confinado o que medie su renuncia a ese derecho. A su vez, en su Artículo XII, inciso (4), detalla que el personal designado llevará un registro sobre la fecha y hora en la cual se recibe una correspondencia legal en la institución correccional y cuando la misma es entregada al confinado. Asimismo, el Artículo V, inciso (11), obliga a la institución correccional receptora de una correspondencia legal destinada a un confinado que fue trasladado a otra institución, a remitir la referida correspondencia a la institucional actual del confinado.

Mientras que, el Reglamento Núm. 7594 en su Artículo IV, inciso (5), establece que la *correspondencia rechazada* es aquella que es devuelta al remitente por no cumplir con las normas establecidas en el propio reglamento.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

De entrada, autorizamos la litigación *in forma pauperis* y por derecho propio del recurrente, toda vez que no posee los medios económicos para sufragar los costos del litigio. A continuación, procedemos atender el recurso de epígrafe.

En síntesis, el recurrente alegó que no recibió dos (2) correspondencias legales remitidas por el tribunal de instancia —correspondientes al mes de diciembre de 2023 y enero de 2024— a la Institución Correccional 501 de Bayamón. Razón por la cual, nos solicitó la revocación de determinación de la agencia administrativa y, a su vez, le ordenáramos investigar la desaparición de las referidas correspondencias legales.

Por su parte, la Oficina del Procurador General indicó que la agencia administrativa realizó una investigación exhaustiva sobre las alegadas correspondencias legales remitidas al recurrente y la misma arrojó que la Institución Correccional 501 de Bayamón nunca recibió la referida correspondencia. Argumentó, además, que en la medida que el recurrente no demostró que la actuación de la agencia administrativa fue irrazonable, la determinación recurrida debía ser confirmada. Tiene razón, veamos.

Según explicamos, el Reglamento Núm. 7594, *supra,* reconoce el derecho de los miembros de la población correccional a recibir correspondencia y, a esos efectos, identifica (3) tipos de correspondencias. En lo aquí pertinente, establece la *correspondencia privilegiada o especial* —t/c/c correspondencia legal— como aquella que se recibe de un tribunal federal o estatal. Además, dispone de un procedimiento de monitorio e inspección para la referida correspondencia legal, a saber: (1) exige que tal correspondencia no sea leída ni abierta por el personal designado, salvo en presencia el confinado receptor; (2) exige que el personal designado a inspeccionar la correspondencia legal realice un registro con las fechas y horas de su recibo y entrega; y (3) en caso de que el confiando sea trasladado de institución correccional, exige que la institución que recibe la correspondencia legal envié la misma a la institución donde se encuentre el confinado receptor.

Ante esta reglamentación aplicable, reconocemos que el señor Vázquez tiene derecho a recibir correspondencia legal como la que alegó haber recibido por parte del tribunal de instancia. No obstante, nos parece prudente resaltar que, el Departamento de Corrección y Rehabilitación no le ha negado su derecho a recibir correspondencia legal. Más bien, la actuación de la agencia administrativa consistió en investigar directamente con el personal designado de inspeccionar y monitorear la correspondencia legal, si la institución correccional había recibido alguna correspondencia dirigida al recurrente. Por tanto, la actuación de la agencia administrativa fue conforme a las exigencias del Reglamento Núm. 7594, *supra.*

Surge de la determinación recurrida que, los registros de la institución correccional no reflejan ninguna correspondencia destinada para el señor Vázquez entre el mes de diciembre de 2023 ni enero de 2024 ni en ninguna otra fecha cercana a estas. Así pues, la Institución Correccional Bayamón 501 no tenía ninguna correspondencia que enviar a la institucional actual del señor Vázquez —Institución Correccional Guayama 1000—, en cumplimiento con las disposiciones del Reglamento Núm. 7594, *supra.* En contraposición a ello, no surge que el recurrente haya señalado evidencia alguna que obre en el expediente administrativo para demostrar que la investigación y determinación de la agencia fue irrazonable.

Colegimos pues que, en el caso ante nuestra consideración, el recurrente no derrotó la presunción de corrección en cuanto la decisión administrativa, conforme con la LPAU y la reglamentación aplicable. De este modo, solo plasmó unas alegaciones que no demostraron que el Departamento de Corrección y Rehabilitación actuó de manera irrazonable, ilegal o de forma arbitraria en su determinación. En virtud de la deferencia que debemos al foro administrativo y la falta de evidencia que logre rebatir la presunción

de corrección que le asiste a la determinación recurrida, resolvemos que procede confirmar la misma.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la determinación del Departamento de Corrección y Rehabilitación.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones