Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| SLAKE, LLC<br>MYRNA RANGEL<br>Y ENRIQUE RANGEL<br>PINTADO<br>Parte Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES<br>DEL CONDOMINIO<br>MADRID;BETH BEDELL,<br>PRESIDENTA DE LA JUNTA<br>DE DIRECTORES APM<br>ADMINISTRATION GROUP<br>CORP. AGENTE<br>ADMINISTRADOR<br>Parte Recurrida | TA2025AP00664 | *Revisión Administrativa*<br>procedente del<br>Departamento de<br>Asuntos del<br>Consumidor<br><br>Caso Núm.:<br>C-SAN-2024-0019718<br>C-SAN-2025-0021178<br>(CONSOLIDADOS)<br><br>Sobre:<br>LEY DE<br>CONDOMINIOS |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de enero de 2026.

Comparece ante nos la corporación Slake LLC mediante *Recurso de Revisión* y nos solicita la revisión de una *Resolución* emitida el 22 de septiembre de 2025 y notificada el 7 de octubre de 2025 por el Departamento de Asuntos al Consumidor (DACo), en la cual la agencia administrativa desestimó una querella sobre reinstalación y restitución de cisterna propiedad de la parte querellante en área común limitada designada para ello. Por recurrir de una determinación de una agencia administrativa, acogemos el recurso como una revisión judicial. No obstante, mantenemos el código alfanumérico asignado por la Secretaría de este Tribunal por cuestiones de economía procesal.

Adelantamos que se confirma la resolución recurrida.

**I**

El 17 de julio de 2024, la corporación Slake LLC (parte querellante) presentó una *Querella*[1] ante el Departamento de Asuntos del Consumidor

---

[1] Sistema Unificado de Manejo y Administración de Casos para el Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Anejo 1.

(DACo) contra el Consejo de Titulares del Condominio Madrid (parte querellada) sobre reinstalación y restitución de cisterna propiedad del querellante en área común limitada designada para ello y daños y perjuicios. Expresó que en el año 2021 adquirió la titularidad de varias oficinas en el segundo piso del Condominio Madrid y que dichas oficinas contaban con unas cisternas integradas a la infraestructura física y pluvial del condominio previo a su adquisición. Añadió que las mismas estaban ubicadas en un área designada como elemento común para los titulares comerciales de los pisos dos y tres, según surgía de la escritura matriz.[2] Alegó que, tras la aprobación del Consejo de Titulares sobre la reparación y sellado del estacionamiento del condominio, se acordó que las cisternas serian removidas de los elementos comunes de manera provisional mientras se realizaban los trabajos. Manifestó que, tras la culminación de los trabajos en febrero de 2024, las cisternas no fueron reinstaladas según acordado. Arguyo que, a pesar de haber intentado en varias ocasiones comunicarse con el Consejo, no obtuvo respuesta en ninguna de ellas. Por lo cual, solicitó a la agencia administrativa que ordenase la inmediata reinstalación y reconexión de las cisternas.

Por su parte, el 17 de diciembre de 2024, el Consejo de Titulares presentó una *Moción de Desestimación por Prescripción*. En consecuencia, el recurrente presentó su *Oposición a Moción de desestimación por prescripción y reiterando anotación de rebeldía y señalamiento de vista* el 18 de diciembre de 2024. Así las cosas, el 17 de marzo de 2025, DACo emitió una *Notificación* en la que declaró *No Ha Lugar* la moción de desestimación presentada.

Posteriormente, el Consejo de Titulares presentó su *Contestación a la Querella*[3] el 7 de abril de 2025. En la misma, negó varias de las alegaciones de la Querella según esbozadas. Adujo que la instalación de la cisterna en el área reclamada era incompatible con el uso provisto en la

---

[2] SUMAC TA, a la Entrada Núm. 1, Anejo 4., págs. 5-10.
[3] *Id.* A las págs. 1-4.

escritura matriz. A tenor, solicitó a la agencia administrativa que denegara la Querella presentada por el recurrente.

El foro administrativo emitió una *Notificación y Orden*[4] el 30 de abril de 2025, en la cual notificó la consolidación de la querella de epígrafe C-SAN-2024-0019718, y la querella C-SAN-2025-0021178. Esta última fue presentada por la señora Myrna Rangel y el señor Enrique Rangel (los co-querellantes) como propietarios de un apartamento comercial en el primer piso del Condominio Madrid que opera un negocio clínico estética. El foro administrativo concluyó que ambas reclamaciones estaban íntimamente relacionadas por contener cuestiones comunes de hechos y derecho.

Posteriormente, la agencia recurrida celebró dos vistas en su fondo, siendo la primera de ellas el 4 de junio de 2025. Se señaló la segunda vista en su fondo para el 12 de junio de 2025, en la cual se culminó la presentación probatoria y el caso quedó sometido para adjudicación. A raíz de ello, la agencia administrativa emitió una *Resolución*[5] el 22 de septiembre de 2025, la cual notificó el 7 de octubre de 2025. Mediante la misma, desestimó la querella presentada por el recurrente y determinó que, según surgía de la escritura matriz, el área donde las cisternas estaban instaladas era un área limitada para la instalación de unidades de torre de enfriamiento para el acondicionador de aire de las oficinas de los pisos dos y tres. Concluyó que no surgía de la escritura matriz que dicha área estuviese destinada para la instalación de una cisterna privada. Estimó que la parte recurrente no logró establecer si hubo consentimiento previo del Consejo de Titulares aprobando dicha instalación. Además, el organismo administrativo emitió las siguientes determinaciones de hechos:

1. La parte querellante Slake LLC es una corporación de responsabilidad limitada, la cual es titular de los apartamentos comerciales u oficinas 201, 202, 203, 204 y 206 del Condominio Madrid localizado en San Juan, Puerto Rico. Advino titular de dichos apartamentos desde el año 2021. Dichos apartamentos ubican en el segundo piso del edificio.

---

[4] SUMAC TA, a la Entrada Núm. 1, Anejo 9.
[5] SUMAC TA, a la Entrada Núm. 1, Anejo 2.

2. Al momento de adquirir los apartamentos antes mencionados, los mismos estaban conectados a una cisterna de 600 galones para uso exclusivo de dichos locales comerciales. Esta cisterna estaba instalada allí desde por lo menos el año 2007 y está ubicada en un área común limitada del área comercial del condominio designada para los pisos 2 y 3. Para acceder a dicha cisterna hay que pasar un portón al cual solo tiene acceso la administración del condominio.

3. De otra parte, Myrna Rangel y Enrique Rangel Pintado son titulares del apartamento comercial número 4 en el Condominio Madrid, localizado en San Juan, Puerto Rico. Adquirieron dicha propiedad mediante la escritura número 14, sobre donación, otorgada el 12 de febrero de 1998 ante el notario Luis A. Arrufat Pimentel. Dicho apartamento ubica en el primer piso del edificio y en dicho local opera un negocio clínica estética conocida con el nombre de "Renuderm", la cual se dedica a dar tratamientos de piel.

4. El apartamento de la señora Myrna Rangel tenía instalada una cisterna de 600 galones para dar servicio exclusivo a su apartamento y su negocio. Dicha cisterna está ubicada en el segundo piso, en la misma área donde instalada la cisterna que sirve a los apartamentos pertenecientes a Slake LLC. La titular indico que dicha cisterna fue instalada allí desde el año 1989 debido a un evento de sequía, antes de esta advenir titular del apartamento. Para instalar dicha cisterna, la señora Rangel indico que se obtuvo permiso previo del condominio. No obstante, no presento ningún documento que establezca dicha autorización.

5. La señora Beth Bedell es la actual presidenta de la Junta de Directores del Condominio Madrid. Esta ejerce dicha función desde el mes de agosto de 2023.

6. APM Administration Group Corp., es el actual agente administrador del Condominio Madrid. Su presidenta es Barbara Martínez y dicha entidad fue contratada como agente administrador desde el 1 de noviembre de 2023.

7. Conforme la descripción registral que aparece en la escritura mediante la cual las partes querellantes adquirieron sus apartamentos, no se indica que los referidos apartamentos tengan asignada un área para la instalación de una cisterna para uso exclusivo de dichos apartamentos.

8. El condominio Madrid fue sometido al régimen de propiedad horizontal mediante la escritura numero 2 otorgada el 15 de abril de 1975 ante el notario Héctor Ceinos. Dicho condominio es uno de carácter mixto el cual consta de 40 apartamentos residenciales entre los pisos cuarto al décimo, 5 locales comerciales en el primer piso y 12 oficinas comerciales en los pisos dos y tres.

9. Conforme la escritura matriz antes mencionada, se indica que entre los elementos comunes generales del condominio, se encuentra una cisterna que da servicio a todos los apartamentos del condominio.

10. Igualmente, dicha escritura establece como un área común limitada de los pisos dos y tres, un área donde entre otras cosas, se deben ubicar las unidades de torre del enfriamiento para el acondicionados de aire de las oficinas de dichos pisos. Es en esta área donde están ubicadas las cisternas de los apartamentos de las partes querellantes. No se indica que dicha área sea para el uso de ningún apartamento ubicado en el primer piso. Igualmente, no se indica que en dicha área se puedan colocar cisternas para el uso exclusivo de algún apartamento comercial.

11. El 19 de mayo de 2023 el Consejo de Titulares del Condominio Madrid aprobó mediante asamblea extraordinaria la reparación y sellado del estacionamiento del condominio. Para realizar esta obra, el 15 de agosto de 2023 se contrató a la compañía Sorit General Contractor LLC.

12. El 31 de agosto de 2023, se llevó a cabo una reunión. En la misma, participo la presidenta de la Junta de Directores, Beth Bedell; Yahira Caro, como vocal de la Junta en representación de Slake LLC; el entonces administrador, Leonardo Garcia; Tirso Rodríguez, representante del contratista Sorit General Contractors LLC; y el Ingeniero Víctor Figueroa, inspector de obra. Dicha reunión fue con el propósito de coordinas los asuntos pendientes e iniciar los trabajos de sellado del estacionamiento. En dicha reunión no participo APM Administration Group, toda vez que en dicha fecha no era el agente administrador del condominio Madrid.

13. Luego de dicha reunión, Yahira Castro preparo unas notas sobre lo discutido en la misma. En dichas notas se indicaba en los puntos 4 y 5, que las cisternas serian desconectadas y reconectadas por un plomero que el condominio debía contratar. Igualmente, se indicaba que se notificaría a Renuderm y a la oficina 306 que la cisterna seria removida y Renuderm vaciaría dicha cisterna. Estas notas fueron notificadas a la presidenta de la Junta de Directores por Yahira Castro, mediante un correo electrónico de 31 de agosto de 2023.

14. Dicho correo fue contestado el mismo día 31 de agosto de 2023 por la presidenta de la Junta de Directores, indicando que "Perfecto" y brindo comentarios adicionales sobre la coordinación de los trabajos.

15. De otra parte, 6 de septiembre de 2023 el Ingeniero Víctor Figueroa, quien sería el inspector de la obra, igualmente remitió un correo electrónico a la presidenta de la Junta de Directores anejando un resumen de lo discutido en la reunión, e indicando entre los asuntos discutidos la remoción y la reinstalación de las cisternas.

16. En el mes de septiembre de 2023 se comenzaron los trabajos de sellado y reparación del estacionamiento. Dichos trabajos se extendieron por alrededor de seis meses. Al comenzar los mismos y conforme fue acordado, el contratista retiro las dos cisternas ubicadas en el

segundo piso y que daban servicio a los apartamentos de las partes querellantes.

17. Una vez concluyeron los trabajos, no se reinstalaron las cisternas según se había acordado verbalmente.

18. Toda vez que las cisternas no fueron reinstaladas, la Yahira Castro solicito verbalmente en varias ocasiones la reinstalación de las cisternas que fueron removidas. Dichas solicitudes no fueron concedidas, toda vez que la presidenta de la Junta de Directores le indico a Yahira Castro, que luego de hablar con un expresidente de la Junta de Directores y recibir orientación legal, se indicó que en dicha área no podía instalarse cisternas, toda vez que según la escritura matriz el área estaba destinada para los acondicionadores de aire de los apartamentos del segundo y tercer piso, por lo que la reinstalación tenía que ser autorizada por el Consejo de Titulares. Igualmente, la presidenta les requirió un documento donde se indicar[á] que el Consejo de Titulares había autorizado previamente la instalación de las cisternas en dichas áreas.

19. El 1 de abril de 2024, la Lcda. Yahira Castro como representante de Slake LLC remitió una carta por correo electrónico a la presidenta de la Junta de Directores y la administración. En la misma se hizo un resumen de los acuerdos y las gestiones realizadas para reinstalar las cisternas. Por último, se solicitó por tercera vez la reinstalación de las cisternas de los apartamentos que fueron removidas.

20. Mediante correo electrónico de 2 de abril de 2024, la parte querellante dio seguimiento a la comunicación del 1 de abril de 2024. Dicha comunicación no fue contestada.

21. El 5 de junio de 2024, la parte querellante remitió una nueva carta a la parte querellada reiterando su reclamo de instalación de las cisternas. Dicha comunicación no fue contestada.

22. Toda vez que la parte querellada no contesto la reclamación de la parte querellante, Slake LLC present[ó] la querella C-SAN-2024-0019718 de manera electrónica el 13 de agosto de 2024, solicitando se le reinstale la cisterna a su apartamento conforme acordado.

23. De otra parte, el 28 de marzo de 2025 los co-querellantes Myrna Rangel y Enrique Rangel Pintado presentaron de manera electrónica la querella C-SAN-2025-0021178, solicitando el mismo remedio de reinstalación de su cisterna y la consolidación de las querellas por tener asuntos comunes de hecho y Derecho.

24. Durante la vista administrativa, las partes querellantes indicaron que sus respectivas cisternas habían sido instaladas allí hace años. No obstante, no presentaron ningún documento que indicaran que, para realizar dicha instalación, se hubiese logrado autorización por parte del Consejo de Titulares del Condominio Madrid.

25. Actualmente, las cisternas que fueron removidas se encuentran en el mismo lugar donde fueron

desinstaladas. No obstante, se encuentran vacías y sin conectar. Los accesorios de dichos equipos se encuentran en el cuarto de almacenamiento.

26. En el condominio Madrid todos los apartamentos, incluyendo los apartamentos de las partes querellantes, tienen acceso a la cisterna comunal del Condominio. No existe ningún otro apartamento que tenga instalada una cisterna para uso exclusivo de un apartamento en un área comunal.[6]

Inconforme con el dictamen, la parte recurrente presentó una *Moción de Reconsideración y Solicitud de Enmienda a Determinaciones de Hechos*[7] el 27 de octubre de 2025 ante la agencia administrativa. Adujo que, de la totalidad de la evidencia documental y testifical presentada por el recurrente, se podía concluir razonablemente que el Consejo prestó su consentimiento para la instalación de las cisternas. Añadió que DACo coartó sus derechos cuando le impuso la carga de producir evidencia documental que acreditara el consentimiento del Consejo y, a su vez, limitó su acceso al Libro de Actas del Condominio. A tenor, solicitó la reconsideración de la Resolución, y que se ordenase la reconexión de las cisternas en controversia.

Transcurrido el término para que DACo acogiese la reconsideración y en ausencia de expresión por parte del foro administrativo, la parte recurrente acude ante nos el 11 de diciembre de 2025 mediante *Recurso de Revisión*,[8] y aduce la comisión de los siguientes errores:

PRIMER ERROR: Erró el DACo al concluir que la instalación y uso de las cisternas —por más de veinte años y en el mismo lugar— variaban el destino de cierta área común del condominio. Tal determinación pasó por alto que dicho espacio constituye un elemento común limitado, históricamente destinado al uso y funcionamiento de los acondicionadores de aire y cisternas que sirven a las unidades comerciales del condominio —cinco de ellas pertenecientes a la parte Recurrente. La utilización continua de esta área para alojar infraestructura mecánica y pluvial de los comercios, incluyendo las cisternas, es plenamente compatible con su función original conforme la Escritura Matriz, y por lo tanto no constituye una alteración ni una variación de uso que requiera su remoción.

SEGUNDO ERROR: El DACo invirtió indebidamente la carga probatoria, en contravención con los principios del Derecho

---

[6] SUMAC TA, a la Entrada Núm. 1, Anejo 2.
[7] SUMAC TA, a la Entrada Núm. 1, Anejo 15.
[8] SUMAC TA, a la Entrada Núm. 1, Anejo 1.

Procesal y las Reglas de Evidencia, al exigir a la parte Recurrente demostrar la inexistencia de la violación alegada por la parte Recurrida. Además, incurrió en error manifiesto y parcialidad en la apreciación de la prueba, al no considerar la suficiencia de la totalidad de la evidencia documental y testifical presentada por la parte Recurrente, apartándose del estándar de preponderancia de la prueba que exige el derecho administrativo y de las propias determinaciones de hecho consignadas en la Resolución Recurrida.

TERCER ERROR: El DACo exigió a la parte Recurrente producir evidencia documental específica sobre el consentimiento previo del Consejo para la instalación de la cisterna hace más de veinte años, mientras simultáneamente restringió el acceso al registro oficial de Actas correspondiente a esos periodos. Esta doble exigencia — imponer la carga probatoria y, a la vez, impedir el acceso a la única fuente de prueba— constituye un proceder arbitrario y contrario a los principios básicos del debido proceso de ley.

CUARTO ERROR: En la alternativa, aun si este Honorable Tribunal entendiera que el DACo concluyó correctamente que la cisterna de la parte Recurrente alteraba el uso y destino de un área clasificada como elemento común limitado para uso exclusivo de los comercios, erró el DACo al no haber determinado que la parte Recurrida incurrió en incuria al permitir, tolerar y no objetar la presencia y uso —por más de veinte años y en el mismo lugar— de dicha cisterna.

Mediante Resolución emitida el 12 de diciembre de 2025 y notificada el 16 de diciembre de 2025, le concedimos a la parte recurrida hasta el 12 de enero de 2026 para presentar su alegato. Transcurrido el término concedido y sin contar con la comparecencia de la parte recurrida, procedemos a resolver.

**II**

A.

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA 9601 *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. La Sección 4.2 de la LPAU, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la

fecha aplicable de las dispuestas en la Sec. 2165 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […] 3 LPRA sec. 9672.

Como norma general, las decisiones de los organismos administrativos deben ser consideradas con gran deferencia por los Tribunales apelativos por razón de la experiencia y pericia de las agencias respecto a las facultades que se les han delegado. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 186 (2009). Sus decisiones merecen deferencia a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. v. Jta. De Planificación*, 177 DPR 545, 566 (2009).

En cuanto a las resoluciones, la Sección 3.1, 3 LPRA sec. 9641, requiere que los organismos administrativos fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC*., 202 DPR 117, 128-129 (2019). Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69*,* 77-78 (2004). Por ello, la revisión judicial de las determinaciones administrativas se limita a examinar si la actuación de la agencia fue razonable, y solo cede cuando la decisión no está basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley, o cuando su actuación es irrazonable o ilegal. *Caribbean Communications v. Pol. De P.R.*, 176 DPR 978, 1006 (2009).

Respecto a las determinaciones de hechos, la Sección 4.5 de la LPAU, *supra,* dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." El concepto

de evidencia sustancial consiste en **"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"**. (Énfasis nuestro.) *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). Por lo tanto, para convencer al Tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

En cuanto a las conclusiones de derecho, éstas serán revisables en todos sus aspectos por el Tribunal. Como conocedores del derecho, los Tribunales no tienen que dar deferencia a las interpretaciones de derecho que hacen las agencias administrativas. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). Éstos están en la misma posición que la agencia al evaluar la prueba documental y pericial. *Rebollo v. Yiyi Motors*, *supra*, a la pág. 78. A pesar de ello, los Tribunales no pueden descartar liberalmente las conclusiones e interpretaciones de la agencia. *JP, Plaza Santa Isabel v. Cordero Badillo, supra*, a la pág. 187.

B.

La Ley Núm. 129-2020, conocida como *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), rige el ordenamiento jurídico sobre la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. A este estatuto, le siguen la escritura matriz y el reglamento del condominio en cuestión. *Con. Tit. Centro Int´l Torre II v. PRCI*, 210 DPR 403, 413-414 (2022). La primacía del

estatuto implica que cualquier cláusula o regla claramente contraria a sus disposiciones sería nula. *Id.*, pág. 414. Del mismo modo, nuestro Tribunal Supremo ha resuelto que las disposiciones del estatuto especial son de carácter mandatorio y no supletorio. *Con. Tit. Centro Int'l Torre II v. PRCI*, *supra*; *Condominio First Federal v. LSREF2*, 202 DPR 934, 940 (2019).

El Consejo de Titulares es la autoridad máxima sobre el inmueble sometido al Régimen de Propiedad Horizontal. 31 LPRA sec.1922t. Esta entidad tendrá personalidad jurídica propia y estará integrada por todos los titulares del inmueble. *Id.* La Ley de Condominios establece que las resoluciones y acuerdos adoptados por el Consejo de Titulares en asambleas debidamente convocadas y constituidas, serán de cumplimiento para todos los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio. *Id.*

De otro lado, la Junta de Directores es el órgano ejecutivo de la comunidad de titulares. 31 LPRA sec.1922y. Entre las funciones encomendadas en ley está el atender "lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares". *Id.*

El régimen jurídico de condominios nace de la voluntad de uno o varios titulares plasmada en una escritura pública conocida como escritura matriz. 31 LPRA sec. 1921b. Nuestro Tribunal Supremo ha expresado que "la escritura matriz es el mapa que guiará con relación al destino y uso de las áreas que comprenden el inmueble." *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 160 (2011). Asimismo, se ha establecido que la escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares a medida que éstos adquieran sus apartamentos en el régimen. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 845 (2011). En lo concerniente a la

referida escritura matriz, la Ley de Condominios de Puerto Rico en su Artículo 4 establece lo siguiente:

> La escritura que establezca el Régimen de Propiedad Horizontal **expresará clara y precisamente el destino y uso de toda área comprendida en el inmueble**, excepto que esta Ley autorice lo contrario, una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, excepto las modificaciones a la escritura matriz, con el fin variar el uso de un apartamento de uno residencial a uno no residencial o viceversa, requerirán del consentimiento unánime de todos los titulares. **Las disposiciones de variaciones de destino y uso en este Artículo, con relación al número de votos requeridos, no se aplicarán a los inmuebles sometidos al Régimen de Propiedad Horizontal previo a la aprobación de esta Ley, los cuales sólo se podrán modificar por unanimidad de los titulares.** (Énfasis nuestro.) 31 LPRA sec. 1921c.

Ahora bien, con respecto a los elementos comunes, estos se han definido como "los elementos que no son susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa." 31 LPRA sec. 1921b. Sobre los elementos comunes sometidos al Régimen de Propiedad Horizontal, el Artículo 17 de la Ley de Condominios dispone lo siguiente:

> a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa, los siguientes:
>
> […]
>
> (3) Los locales para instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares que sean indispensables para el adecuado disfrute de los apartamentos, salvaguardando que estos elementos no sirvan únicamente a un apartamento privado.
>
> […]
>
> (b) Se consideran elementos comunes generales, salvo disposición o estipulación en contrario los siguientes:
>
> (1) El terreno, los sótanos, azoteas, patios y jardines.
>
> (2) Los locales destinados a alojamiento de porteros, oficiales de vigilancia, personal que presta servicios de limpieza y mantenimiento u otros, así como los locales destinados para almacenamiento conocidos como covachas.

(3) Las áreas destinadas a estacionamiento.

(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes. 31 LPRA sec. 1921p.

[…] 31 LPRA sec. 1921p.

De igual modo, la precitada legislación exige que en la escritura matriz se precisen los elementos comunes y se especifique su uso y destino. *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311, 334 (2012). El Tribunal Supremo ha resuelto consistentemente que la variación del uso y destino del objeto del régimen de propiedad horizontal está supeditado al consentimiento unánime de todos los titulares y a la importancia de las delimitaciones contenidas en la escritura matriz que lo constituyó. *Bravman, González v. Consejo Titulares, supra,* a la pág. 856*.*

**III**

En el recurso ante nuestra consideración, el recurrente nos solicita que revisemos una *Resolución* emitida por DACo el 22 de septiembre de 2025 y notificada el 7 de octubre de 2025, mediante la cual se desestimó una querella sobre reinstalación y restitución de una cisterna propiedad del querellante en un área común limitada designada para ello; daños y perjuicios. En su comparecencia, el recurrente nos plantea cuatro errores cometidos por DACo. Tras un análisis detenido del expediente, resolvemos confirmar la decisión tomada por el foro administrativo. Veamos.

En *primer lugar*, el recurrente nos plantea que erró el foro administrativo al concluir que la instalación y uso de las cisternas variaba el destino del área común del condominio. Como es sabido, nuestro ordenamiento jurídico exige que, mediante la escritura matriz, se precisen los elementos comunes y se especifique su uso y destino. 31 LPRA sec. 1921c. Una vez se ha fijado dicho destino y uso este sólo puede ser variado mediante el consentimiento unánime de todos los titulares. *Id.* De la escritura matriz se desprende que el área común donde el recurrente ubicaba las cisternas estaba limitada a la instalación de unidades de torre de enfriamiento para el acondicionador de aire de las oficinas de los pisos

dos y tres. A pesar de haber transcurrido un largo periodo de tiempo en el cual las cisternas estuvieron ubicadas en dicha área, no surge de la escritura matriz, ni de la prueba documental presentada, que se haya autorizado una variación en el uso de esa área común. En ausencia de evidencia sobre lo anterior, es forzoso concluir que las mismas se encontraban instaladas en violación a las disposiciones de la Ley de Condominios y, por consiguiente, no incidió el foro administrativo en su determinación.

En *segundo lugar,* sostiene el recurrente que erró el foro administrativo al invertir indebidamente la carga probatoria y exigirle demostrar la inexistencia de la violación alegada. Añadió que, incurrió en error manifiesto y parcialidad en la apreciación de la prueba, al no considerar la suficiencia de la totalidad de la evidencia documental y testifical presentada por el recurrente, y se apartó del estándar de preponderancia de la prueba que exige el derecho administrativo. Sin embargo, contrario a lo planteado por el recurrente, DACo encontró demostrado mediante preponderancia de la prueba que el uso de las cisternas en el área común carecía de protección legal, por no estar reconocido en la escritura matriz. Como es sabido, en los foros administrativos no se exige certeza absoluta sobre los hechos, sino lo que la totalidad de la prueba haga más probable. *Pereira Suárez v. Jta. Dir. Cond.,* 182 DPR 485, 529 (2011). Ciertamente, en este caso, la parte recurrente no logró controvertir las aseveraciones fácticas de los hechos relevantes ni las inferencias razonables allegadas por el ente administrativo.

Ahora bien, aunque la parte recurrente señaló que DACo incidió en su apreciación de la prueba, este no sometió una transcripción de la prueba oral para colocar a este tribunal en posición de intervenir con la apreciación de la prueba testifical que hiciera el foro administrativo. Si bien la omisión de la parte recurrente imposibilitó la evaluación de la prueba oral, ello no obstaculiza el ejercicio de nuestra función revisora, pues el expediente

contiene suficiente prueba documental para atender los señalamientos de error formulados. Por lo cual, tras una evaluación de la prueba documental y el expediente determinamos que no le asiste la razón.

En *tercer lugar*, se alega por la parte recurrente que el foro administrativo incidió al imponerle una doble exigencia, exigiéndole producir evidencia sobre el consentimiento del Consejo, y a su vez, impidiendo su acceso a la única fuente de prueba. A la luz del expediente de autos y la prueba documental, la exigencia que hiciere el foro administrativo de presentar evidencia sobre la existencia de una autorización del Consejo de Titulares nos parece razonable. Asimismo, no consta del expediente que DACo negase o impidiese a la parte recurrente el acceso al Libro de Actas. Más bien, el foro administrativo al amparo de su discreción adjudicativa y del conocimiento especializado que le es inherente, limito el tiempo de la documentación solicitada a dos (2) años por entender que un periodo mayor seria irrazonable y supondría un abuso del derecho.

Ahora bien, nuestro Tribunal Supremo ha expresado que, para convencer al Tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Por tal razón, si en la solicitud de revisión la parte afectada no demostrase la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor. *Domínguez v. Caguas Expressway Motors, Inc., supra.* No surge del expediente que el recurrente haya presentado evidencia que reduzca o menoscabe el valor probatorio de la evidencia impugnada. Por lo cual, no tiene méritos su alegación.

Por último, nos plantea el recurrente que erró el foro administrativo al no determinar que la parte recurrida incurrió en incuria al permitir, tolerar y no objetar la presencia y uso de la cisterna en el área común. Del propio expediente y de las determinaciones de hechos realizadas por el foro administrativo y con las cuales el recurrente estuvo de acuerdo, surge que tanto la presidenta de la Junta de Directores, la señora Beth Bedell,[9] como el actual agente administrador del condominio, APM Administration Group Corp.,[10] comenzaron sus funciones en el año 2023. Mismo año en el que comenzaron los trabajos de sellado y reparación del estacionamiento, y en el cual fueron removidas las cisternas del área común. Por lo tanto, no tiene méritos su alegación.

Habida cuenta de todo lo aquí consignado, resolvemos que la decisión administrativa impugnada por la parte recurrente en el recurso de epígrafe es una razonable, que encuentra apoyo en el expediente administrativo. La misma es correcta en derecho, por lo cual debe sostenerse. En conclusión, ninguno de los errores planteados fue incurrido.

**IV**

Por los fundamentos antes expresados, se confirma la *determinación* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] SUMAC TA, a la Entrada Núm. 1, Anejo 2, pág. 2, Determinación de Hecho 5.
[10] SUMAC TA, a la Entrada Núm. 1, Anejo 2, pág. 2, Determinación de Hecho 6.